## SAVAGE v. BENHAM, Adm'r.

1. Where the testator in his will directs his executors to carry on his plantation, in the same manner as he himself had carried it on, until the death of his wife, and after a partial administration of the estate by one of the executors named by the will, the administration is committed with the will annexed, to another person, who enters on the performance of this trust of the will, the orphans' court has jurisdiction to require him to make annual settlements; and when he makes an annual settlement, pursuant to the act of 1843, that may be reviewed in this court by writ of error.— Quere? however, whether those interested in the final settlement afterwards to be made, will be precluded from *surcharging* the annual settlements.

2. When a single person appears and contests a settlement in the orphans' court, the contesting party is the one in whose name the writ of error should be sued out, there being no final judgment in favor of any others interested in the settlement.

3. An administrator with the will annexed, carrying on a plantation under a power in the will, to do so in the same manner the testator had done, is required to show when settling his accounts in the orphans' court, to sustain his charges for articles furnished for the estate, or the payment for services rendered, that the same came to the benefit of the estate, or were rendered to it.

4. Beyond this, so far as his acts are consistent with good faith, it is not in-

7

cumbent on him to show, that the articles purchased were necessary, or the price paid was reasonable. Under such a will, his discretion will not be reviewed, unless exercised in so unreasonable a mode as to produce distrust of its *bona fides.*

5. Such an administrator is not chargeable with, and therefore is unauthorized to pay the debts contracted by the executor on account of the estate, except under such circumstances as would induce a court of equity to charge the estate.

6. A constable's receipt, purporting to be for the payment of a judgment against the estate, is not of itself a sufficient voucher to prove the debt, or its payment.

Writ of Error to the Orphans' Court of Lauderdale.

The errors complained of in this cause are supposed to arise out of the decree of the orphans' court, in the matter of an annual settlement of the estate of Samuel Savage, had before said court, in 1846, by Benham, the administrator with the will annexed.

The account having been stated by the court, and publication ordered for those interested in the estate to appear, &c. Martha Savage, as administratrix of the estate of Samuel G. Savage, deceased, who was a legatee under the will of Samuel Savage, appeared and filed exceptions to certain items in the account, and required proof of the same.

The first item excepted to is a charge of $45 for a horse. In support of this, the administrator produced a receipt, purporting to be made by one Johnson, for that sum, for a horse sold to the administrator, for the use of the plantation of the deceased. The party contesting objected to this proof, unless the execution of the receipt was proved, and unless it was also shown that the horse was purchased for the benefit of the estate, at a reasonable price. The court decided the receipt proved itself, and was sufficient evidence of all the facts which the contestant required to be proved.

The court also decided with respect to this item, that as it was not excepted to in writing, no objection could be urged against it at the hearing.

Another item is, a charge for $109 paid B. F. Rhodes. To

support this, the administrator produced a note, purporting to be made by one George M. Savage, as executor of Samuel Savage, the decedent, and also produced affidavits to show this note was given to the payee for an account against the estate of Savage, for shoes and leather for the benefit of that estate.

A clause in the will annexed to the administration provides as follows : " My tract of land I wish to remain undivided, and my plantation conducted in the same manner as I have carried it on, until the death of my beloved wife, and I do hereby empower my executor to do all and any thing necessary for the purpose of keeping up my plantation, by keeping the negroes, stock, tools, &c. on the plantation, by employing overseers, buying and selling stock and farming utensils, necessary for the culture of the same ; and in all things to act for the prosperity of the plantation affairs as I have been accustomed to do. When my youngest children arrive at the age of twenty-one years, it is my desire that they shall be advanced by my executors, by giving them as much property as I have given to my elder children on their marriage or majority. I charge my executors to do it with a special regard to the management of my plantation to the best advantage."

The administrator then proved the admission of the contestant, that the note on which this item was founded, was given for shoes and leather purchased for the estate, at the instance of George Savage, and that the same were used by slaves of the estate. The contestant objected to this evidence—

1. Because the affidavits were *ex parte.*

2. Because there was no proof that the articles were necessary for the slaves of the estate, or that the prices charged were reasonable or proper.

3. Because it did not appear that George Savage had settled his executorship with the orphans' court.

4. Because there was no proof that George Savage was insolvent, or that he resided out of the State.

5. Because there was no proof of a promise by the administrator to pay this debt.

6. Because this note was not a charge against the estate,

for which the administrator was liable. The court allowed the charge.

Another item of charge for a note of George Savage, made to one Harkins, and paid by the administrator was allowed on similar proof, against similar objections.

Another item of charge, for the amount of an account contracted by George Savage, with T. M. & J. Harkins, on account of the estate, and charged to the estate, was allowed on similar proof against similar objections.

Another item of charge, for payments made to the attorney of A. C. & W. A. Austin, on account of a note executed to them by George Savage, was admitted on similar proof, against the like objections.

The contestant excepted to the several rulings of the court, and they are now assigned as error.

In another cause between the same parties, being the annual settlement of the same estate, for the year 1844, several items of charges were excepted to by the contestant, amongst which is one of a payment of $407 to John Simpson & Co. and another of $441 to Charles Gookin. To sustain those items, the administrator introduced the will as before stated. He then proved these items were for merchandize sold by the parties respectively to himself, and charged by his direction to the estate. The contestant objected to the sufficiency of this proof, and insisted the administrator should further prove that the articles paid for were necessary for the purpose of carrying on the plantation, and that they were used for the benefit of the estate.

Another item of $10 63 was supported only by the production of a constable's receipt for that sum, purporting to be for a judgment against the estate.

The other items objected against, are several amounts of $232, $262 50 and $150, paid for professional services in a suit in the Supreme Court of the United States. It was proved that all these items were for moneys expended by the administrator for debts contracted by himself. The contestant insisted he should show further, that a necessity existed to contract these debts, and that the consideration of them passed to the estate of Savage. The court refused to require such proof, or any proof on the subject, and decided

that the administrator was the sole judge of the necessity, of creating the debts, which in his account purport to have been created and paid by him—that their creation and payment were sufficient vouchers to charge the estate.

The contestant excepted, and these matters are assigned as error in that cause.

The two causes were argued at the same time.

L. P. WALKER, for the plaintiff in error, insisted—

1. That the mere receipt of a third person produced by the administrator, is no evidence to charge the estate. [Alander v. Alexander, 8 Ala. R. 797.]

2. The circumstance that no written exceptions were filed as to particular items, did not preclude their investigation by the court. [Steele, adm'r, v. Knox's Distributees, 10 Ala. Rep. 609.]

3. The power given by the will is to purchase necessary articles—therefore proof should be given of this fact as well as that they were for the estate. [Alexander v. Alexander, 8 Ala. Rep. 797.]

4. The debts contracted by Savage, the previous representative of the estate, were no charge against the estate. [2 Porter, 33; 3 ib. 221.] Even if the estate might be charged, if Savage was not indebted to it, the creditor does not show a state of facts to call for a payment from the estate. An administrator cannot bind the estate by his contract. [McBeth v. Smith, Const. Rep. 676; McGhee v. Price, 2 N. & McC. 328; Hanaker's Est. 5 Watts, 204.] Nor can an administrator *de bonis non* be charged on an implied contract by the administrator in chief. [O'Neal v. Abney, 2 Bail. 317.]

5. The general rule is, that all trustees must show *prima facie*, that expenditures by them are warranted by the circumstances of the case. Here the court refused to require any proof whatever.

E. W. PECK, for the defendant in error, suggested a preliminary question, whether the writ of error was not premature, as a judgment in a case like this is interlocutory only. [Merrill v. Jones, 5 Porter, 554; Harrison, *Ex parte*, 7 Ala.

Rep. 736 ; Watson v. May, 8 ib. 177.]   Besides this, all the parties to the settlement are not before the court, as there were other parties in interest, who did not contest the settlement.   [7 Ala. Rep. 928.]

On the merits he insisted—

1. That the estate of Savage was chargeable in equity for the articles furnished to the previous executor, as they were used for the estate, and if so, the administrator was authorized to pay these debts.   [1 McCord's Ch. 269; 4 Dess. 19, 54.]

2. It cannot admit of question, under this will, the representative was the judge of the necessity for supplies.

3. The rule, that exceptions shall be in writing, is settled in Douthitt v. Douthitt, 1 Ala. Rep. 594, and again in Watson v. May, 8 ib. 181.

GOLDTHWAITE, J.—1. We shall first consider the objection taken to the review of this settlement on the ground that a writ of error will not lie until the estate is finally settled.   Annual, as distinguished from final settlements, seem to be recognized by much of the legislation previous to the enactment of '43, under which this settlement was made.   Thus, guardians as well as executors and administrators, allowed by the orphans' court to keep the estates of their testator or intestate together for a period beyond the scope of an ordinary administration, were required to state their accounts annually.   [Digest, 267, § 3 ; ib. 198, and § 30, 31, 37.]   Another general statute provides that all trustees, whether appointed by will or by deed, shall annually state their accounts to the circuit court of the proper county.   [Digest, 582, § 6.]   Another provides that the documents and evidence of all settlements with executors, guardians and administrators, shall be carefully preserved, and shall not be impeached except for fraud in obtaining the same.   [Digest, 304, § 37.]   Another invests the orphans' court with authority to displace any executor or administrator who has embezzled or misapplied all or any part of the decedent's estate.   [Digest, 221, § 4.]   From these enactments it is evident the orphans' court was intended to be invested with the most plenary jurisdiction over the several subjects they

relate to, and that the power of removal could not well be exercised without an inquiry into the state of the party's accounts. They show further the general scope of legislation is to place all trustees, of whatever description, under a strict accountability, and chiefly at annual periods. Until the enactment which we shall presently advert to the annual settlements of executors, administrators and guardians, had no other effect than to furnish the means of arriving at the true state of the final account, and the preservation of evidence in favor of and against the guardian, and what is said by this court in Willis v. Willis, 9 Ala. Rep. 330; Cunningham v. Pool, ib. 615; and Powell v. Powell, 10 ib., is spoken of accounts stated or allowed previous to that enactment. By it the mode of proceeding is described when it shall be necessary for an executor, administrator or guardian to make either an annual or final settlement of his accounts, and the decree upon it when made is to have the force and effect of a judgment at law. We are entirely satisfied it covers a case like this, and that without any other than the general legislation upon the subject, that the orphans' court has the jurisdiction to require executors, and administrators with the will annexed, to exhibit annual accounts whenever by the terms of the will the administration will necessarily be protracted beyond the ordinary period. It follows, that an annual settlement being within the terms of the act referred to, it may be examined in this court by writ of error. It may admit of question, and therefore we state it as a *quere*, whether annual settlements under this act may not be *surcharged* at the final settlement by those then interested.

2. With respect to the other objection, we think it cannot prevail. It appears, or rather we will assume, that the necessary publication was made. As no other than the party contesting appeared in the court below to contest the accounts of the administrator, and as no judgment was rendered in favor of others, she is the only proper party before this court, in the actual condition of the record. [Harrison v. Harrison, 9 Ala. Rep. 470; Watson v. May, 8 ib. 177.]

3. This brings us to a consideration of the merits of the proceedings in the court below, which may be briefly disposed of. Considering the administrator as succeeding to all

the powers and duties cast by the will on the executors therein named, he was notwithstanding a mere trustee, and as such required to show affirmatively that every charge made by him for debts contracted by himself in that capacity, was for articles which actually came to the use of the estate or for services to it. Thus much the law requires him to show, no matter what was the discretion with which he was invested, and without the influence of this rule, there would be no check whatever on his charges. In the very nature of things, there can be no exception to this rule, as in it rests the notion that trustees are accountable for the mode in which the trust is performed. [Alexander v. Alexander, 8 Ala. Rep. 797.]

4. Beyond this, so far as his acts were consistent with good faith, we think it was not incumbent on him to show the articles were necessary or proper, or that the price paid or agreed to be paid was reasonable. Under the clause in the will, it is certain if he succeeded to the trust as such, that his discretion was of the most extended nature, and in our judgment no court would be warranted in charging him for its exercise, unless the unreasonableness of his contracts was such as to induce a well guarded distrust of their *bona fides*.

5. In regard to the several items of charge for notes and accounts contracted by Savage, one of the executors, and paid by the administrator, we can only say the proof at the hearing did not warrant their allowance. Ordinarily the personal representative of an estate cannot bind its assets by contracts, nor is one administrator responsible for the acts of another. It is, however, held in England, that where a testator directs his trade to be continued after his death, the estate may be charged in the event of the bankruptcy of the executor, when the general assets of the estate are directed to be used in the trade, or to the extent of the particular fund directed to be used. [*Ex parte* Garland, 10 Vesey, 110.] To what extent the same or similar rules are applicable in this State, we shall decline at present to decide, as it is only necessary to determine here that the assets of the estate are not chargeable until the insolvency of the personal representative is made to appear. Whether they are so in that *event*

may possibly depend on the circumstance of his being a creditor of the estate.

6. In relation to the small charge for which a constable's receipt was produced, it seems to fall within the category of other claims attempted to be established by evidence which might be fabricated at pleasure. Doubtless the recovery by any one of a sum of money against the estate by action, would warrant the executor or administrator in paying it, but on contestation of the fact of payment, that as well as the existence of the debt should be proved by competent testimony.

This consideration of the cause enables us to decide the several questions presented. The several items of charge by the administrator for moneys paid or debts contracted by himself should have been sustained by evidence showing those debts were contracted for articles or services which came to or were rendered for the benefit of the estate. The items on account of debts created by the executor, Savage, could only be sustained by showing a state of facts which in equity would subject the assets of the estate to the several creditors; and the charge for the sum paid to the constable should have been supported by proof of the existence of a judgment binding the estate as well as its payment. On all these points the proof in the court below seems to be defective. Judgments reversed, and the causes remanded.