## HOUSTON ET AL. vs. CRUTCHFIELD'S ADM'R.

1. The payment by the sheriff of an execution in his hands is a satisfaction *pro tanto* of the judgment on which it issued, although no endorsement or return of satisfaction is made on the writ.

2. Where the defendant in execution had conveyed his property by deed of trust, and both he and the *cestui que trust*, knowing that the sheriff had advanced the money on the execution, afterwards assented to a sale of the trust property under an *alias fi. fa.* for the purpose of refunding to the sheriff the amount advanced by him, at which sale the trustee himself became the purchaser, equity will protect the trustee, against the suit of the *cestui que trust*, to the extent of the purchase money advanced by him.

3. But the trustee's equity extends only to his protection, and if he resells the property at an advanced price, the profit enures to the benefit of the trust estate.

4. The widow of the defendant in execution is a competent witness for the trustee, when a bill is filed against him by the *cestui que trust*, to prove that the latter, with full knowledge that the sheriff had advanced the money on the execution, assented to the sale of the property under an *alias fi. fa.*, for the purpose of refunding to him the amount thus advanced.

ERROR to the Chancery Court of Benton.
Heard before the Hon. D. G. LIGON.

The bill shows that Aaron Haynes, on the 5th of October, 1839, executed to Houston a deed of trust, by which he conveyed to him as trustee, a house and lot in the town of Jackson, a negro woman, Sophy, and her son Charles, and also various articles of household furniture, to secure the payment of twenty-five hundred and seven dollars, due by Haynes to Crutchfield, the complainant. The lot, however, had been previously conveyed to one Hoke as trustee, to secure the same debt, and it is alleged that the deed to Hoke has been fully executed, by a sale of the lot, and the proceeds applied to the payment of the debt; but that there is still a large amount of said debt unpaid.

It is also alleged that there is a considerable portion of the property conveyed by the deed of the 5th of October, 1839, not sold or applied to the payment of the debt, to-wit: Sophy and her son Charles, besides two children, born since the execution of the deed; that Sophy and her two youngest children are in the possession of James C. Francis, and the boy

Charles in the possession of Jacob Forney, who claim said slaves under some pretended transfer from said Houston, the trustee.

It is also alleged that the defendants procured an execution to be issued on a judgment in favor of Choice Harbin, & Co. against Aaron Haynes, the grantor, and William Haynes, which had been rendered previous to the making of the deed, and on which an execution had previously issued and been delivered to the sheriff of Benton county, and had caused the same to be levied on the slaves, under which they were sold in the spring of 1840; but that the judgment had been paid and satisfied previous to the issuing of the *alias fi. fa.;* that Houston, the trustee, became the purchaser of the slaves at the pretended sale, but that he paid no money, or if he did, he paid it wrongfully; that Francis and Forney still hold said slaves on some secret agreement for the benefit of Haynes.

The bill prays, that the slaves and other property not sold by Houston be sold, and the proceeds applied to the payment of the debt. The bill has been amended several times, but the only fact necessary to be stated, and which is alleged in the amendments, is, the averment that the execution in favor of Choice, Harbin & Co. had been paid, before the issuing of the second or *alias fi. fa.,* and making an exhibit of the receipt of Thomas A. Walker, the attorney of Choice, Harbin & Co., showing that he had received the principal and interest from William C. Price, the sheriff of Benton county.

All the defendants, except the survivor of the firm of Choice, Harbin & Co., answer the bill; but it is unnecessary to set out all their answers. The answer of Houston, the trustee, states that he acted as the trustee, and that he called on Haynes, in the presence of Crutchfield, for the property conveyed; that he sold all that was delivered to him, and that he had faithfully executed the trust and paid over the money to Crutchfield; that Crutchfield, at the time, was fully satisfied, and if any articles conveyed by the deed were not sold, they had been reserved by Haynes, the grantor, with the knowledge and consent of Crutchfield. He, however, admits that the slaves, Sophy and her children, were not sold by him as trustee, and alleges the following facts as the reason why they were not: That at the time of the execution of the deed

of trust, an execution was in the hands of the sheriff, William C. Price, against Haynes, in favor of Choice, Harbin & Co., and which had been levied on said slaves; that the sheriff omitted to sell them, and the money being demanded of him, he advanced the amount, less the cost, to avoid being ruled; that an *alias* was issued, and the negroes sold under it; that he became the puschaser, and bid them off at the sum of seven hundred and ten dollars, and paid the money to the sheriff; that Crutchfield knew of the execution at the time the deed of trust was executed; knew that the sheriff had advanced the money, the issuing of the execution, and that he assented to and advised the sale of said slaves.

The answer also states, that he (Houston) had subsequently sold Sophy to Francis, for the sum of five hundred and twenty dollars, and the boy Charles to one Grant for one hundred and eighty dollars. The answers of the other defendants do not in any manner contradict the answer of Houston; but, so far as they go, are in accordance with it.

The only witness who proves that Crutchfield knew of the sale, the circumstances under which it was made, and that he assented to it, is Mrs. Maria Haynes, who was examined by Houston after the death of Aaron Haynes, her husband, he having died pending the suit. Her deposition fully proves the answer, that Crutchfield knew of the original execution; that the amount was advanced by the sheriff, and that he advised the sale of Sophy and her child in order to reimburse the sheriff.

The Chancellor rejected the testimony of Mrs. Haynes, on the ground of interest, and there being no other testimony to prove the answer in this particular, he rendered a decree against Houston for the amount of money received by him on the sale of the slaves, and referred it to the register to ascertain the same; also, to ascertain what property conveyed by the deed had not been sold. From this decree, a writ of error is prosecuted to this court.

S. F. RICE and J. B. MARTIN, for plaintiffs in error:

1. The right of the respondent, Houston, to amend his answer after the return of the case from this to the court below, is sustained by the case of McLane & Burt v. Plowman, 19

Ala. 138; and is farther justified by the act of the complainant in filing his suplemental bill.

2. The language of this court when this case was before it was, "if Crutchfield knew that Price had advanced the money to Choice Harbin & Co., and also the sale by the sheriff, and assented to it, then his interest in the trust fund would be subjected to indemnify the trustee, Houston;" citing 1 Beavans' R. 129; Crutchfield v. Haynes et al., 14 Ala. 49.

That Crutchfield knew of the advancement of the money by Price, the subsequent levy by him of the execution upon the negroes, and of his intention to sell, and that he not only consented to the sale, but advised and recommended it to be had, is alleged in the answers, (original and amended) and proved by the positive testimony of Mrs. Haynes, who is corroborated and sustained by the answer of every defendant, by many of the charges and statements contained in the complainant's bill, and by all the circumstances connected with the case.

The sole question to be determined is, as to the competency of this witness, (who is the widow of the grantor.) The grantor in a deed of trust, or conveyance, is a competent witness to sustain or defeat the deed when he has no interest in the result. Sims v. Thillen, 12 Ala. 497; Simmons v. Parsons, 1 Bailey 62; Hadduck v. Wilmarth, 5 N. Hamp. 181; Stevenson v. Chapman, 12 N. Hamp. 524; Jackson ex dem. v. Frost, 6 John. 135; Hudson v. Hubbert, 15 Pick. 423.

But it is said that Haynes, being a party defendant to this suit, and having engaged in its defence by filing an answer contesting the right of the complainant to the relief prayed, thereby subjected himself to the payment of cost, and was therefore incompetent as a witness against the complainant, under the authority of the case in 12 Ala. 369 of the Heirs of Holman v. the Bank of Norfolk. But between that and the case at bar there is a most obvious distinction. In that case, the defendant whose testimony was offered was not only charged to be a material party, interested in the cause, but relief was prayed against him, and he (the defendant) not only answered the bill, but proceeded regularly in the defence of the suit by taking testimony; and besides, it is shown that he did have a positive interest in the suit, which would and

did exclude him as a witness, independent of his liability for the payment of cost. But such is not the case made here; the entire object is to charge Houston, and the only property which it is stated that Haynes appropriated, is charged to have been done with the knowledge and consent of Houston, and that he is therefore liable. Haynes, too, is alleged to be insolvent, and no relief is prayed against him. Still, he is made a party, and required by the complainant to answer every statement, charge and allegation of the bill. This he had a right to require, and the defendant in return was bound so to answer under oath. This is all that he has done; and can it now be said by the complainant that one is rendered incompetent, who would otherwise be competent, for merely having done that which he required and the law compelled him to do, merely because he has not so answered as to promote the interest of complainant.

But it is insisted, that although the subject of cost is a matter within the discretion of the Chancellor, it is one that must be exercised in accordance with general rules and former precedents, and that in so doing, under the circumstances of this case, no court would impose cost upon the defendant, Haynes. He is not shown to have been guilty of any wrong or default in reference to the negroes. No act of his could have afforded relief to complainant, or rendered it unnecessary for him to have filed his bill; and as to the other property mentioned in the bill, there is not a particle of proof to sustain the allegations of the bill in reference to it. These facts appearing, cost could not have been imposed upon Haynes, and his testimony would have been allowed had it been offered on the trial. Hunt v. Lewin & Wyser, 4 Stew. & Por. 138; Goodall et al. v. Whitmore et al., 2 Hag. E. R. 160; Gray v. Gray, 15 Ala. 779; Randolph v. Roser, 7 Porter.

The mere fact, that one is a party defendant, does not render him incompetent as a witness, as to matters in which he has no interest. Sprowles et al. v. Samuel, 4 Scammon 139; Warren v. Sprowle, 2 A. K. Marshall 539; Wright v. Wright, 2 McCord Ch. Ca. 205.

With due deference to the *dictum* in the case of the Heirs of Holman v. the Bank of Norfolk, (and which was not ne-

cessary to a decision of the question there presented,) we contend upon authority that a mere liability to cost is not such an interest as will render a witness incompetent, either where there is no relief prayed against him or no material evidence to charge him. Dixon v. Parker, 2 Vesey, Sr., 219; Beebe v. Bank of New York, 1 John. R. 556–77; Cotton v. Luttrell, 1 Atkyns 451; Nelson v. McDonald, 6 John. C. R. 201; Lupton et al. v. Lupton, 2 John. C. R. 614.

The interest here held up as an objection to the competency of the witness, is not a present certain vested interest, and therefore could not exclude the witness. Higgins v. Morrison's Ex'r, 4 Dana 100; 2 Starkie on Ev. 745–6; Hall v. Alexander, 9 Ala. 219; Cleland v. Huey et al., 18 Ala. 343; Soulden et al. v. Van Rennselaer, 9 Wen. 293; Griswold v. Sedgwick, 1 Wen. 126; Teneyck v. Bill, 5 Wen. 55; Greenl. on Ev. 408.

But in this case, Haynes (and consequently his wife) had a positive interest in favor of Crutchfield, and against Houston. The sale of the negroes has been sustained, by which Haynes has obtained a credit upon the execution, which cannot be affected by the result of this suit; and if Crutchfield should succeed in subjecting Houston to the payment of the value of the same property, Haynes would thereby receive the benefit of the same property twice. Hodge v. Thompson, 9 Ala. 131; Pruitt v. Lowry, 1 Por. 101; Bank v. McDade, 4 Por. 252; Yarborough v. Scott, 5 Ala. 222; Greenl. on Ev. 392.

The fact that the estate of Aaron Haynes is insolvent, renders his widow competent; there being nothing to distribute, she can have no interest in the estate. Tatum v. Manning, 9 Ala. 147; McKinney v. McKinney, 2 Stew. 17; Cowen & Hill's Notes 1541, 114 to 119. Nor is this position at all affected by the principles contained in the authorities cited by the Chancellor.

No suspicion of fraud or intentional wrong is attached to the trustee in this case by the evidence, and it is not denied by Crutchfield that he knew, at the time, of the sheriff sale, and it was his duty to have taken immediate steps to set it aside; and not having done so, he will not, after an acquiescence of five years, be allowed to charge the trustee in a court of chancery. Scott et al. v. Freeland, 7 Smedes & M. 409.

The liability of a trustee is not measured by the abstract rule of his duty. The universal test is, "is unfaithfulness proved?" A mistake, however injurious, is not sufficient to charge him, if it appears that he was willing to discharge his duty faithfully as he understood it. Hext v. Porcher, 1 Strobhart's Eq. R. 171.

The decree must be reversed for the following reason, if for no other: It does not allow Houston, the trustee, any compensation for his services as trustee. There is no actual or intentional fraud on the part of the trustee, and, in such case the Court of Chancery never withholds reasonable compensation from the trustee for his services.

If the trustee is chargeable at all, he is charged for too large an amount. Justice requires deductions.

J. T. MORGAN, contra:

I.  1. This case was reported in 14 Ala. Rep. 49, and all the points involved in it now, were then disposed of, and upon the state of proof contained in this record, with the exception of the proof of Mrs. Mariah A. Haynes, which was taken after the case returned to the court below.

2. The question as to Houston's liability for interest on the amount received from the sales of the trust property to Francis and Forney, was not expressly decided when the case was previously in this court, but it is covered by the case of Kirkman v. Vanlier, 7 Ala. 230, and the case there cited from 4 Dess. Rep. 110.

II.  1. Mrs. Haynes is incompetent, because her interest is identical with that of her husband.

2. Haynes in his answer denies the whole ground of complainant's title to relief; he denies that he is indebted to Crutchfield, and also that Crutchfield has paid off other creditors provided for in the deed, and asserts that he is more than paid up, by purchases of property at an undervalue, under sales made in pursuance of the deed. Disconnected from a direct interest in the subject matter of litigation, the manner in which Haynes defends the case, would render him incompetent to testify. He must be liable for costs. Holman's Heirs v. Bank of Norfolk, 12 Ala. Rep. 405.

3. Mrs. Haynes' interest as a distributee of the estate of

her husband, is clear.   Pauline v. Taylor, 11 Ala. 512 ;  Williams, admr., v. Temple, 6 Ala. Rep. 656;  Powell v. Powell, 7 Ala. 582.

4. The deed of trust conveys "all household and kitchen furniture," and other articles exempted from sale for the use of families after death of intestate.   Haynes' answer shows that he had possession of this property, and it went into the hands of his family, or widow.   Here, then, is a direct interest on the part of Mrs. Haynes to defeat the deed of trust, which would take from her this property, which the administrator could not do.

5. Mrs. Haynes' deposition only proves that Crutchfield had notice of the sale, that it would be or had been made, and that he did not object to it.   He was not bound to object, for the sale as against him was unlawful.   It is not a case between parties claiming under equal equities.   Houston had no right to purchase, except upon an express authority from Crutchfield.   No matter what Crutchfield knew about the sale, the law does not require him to protect himself against the acts of his own trustee.   It was more the duty of Houston than of Crutchfield to protect this property from sale; and no sort of intendment can be made in favor of the conduct of an agent, who purchases the trust property in violation of the rights of his principal.   Houston is not in the condition to set up Crutchfield's conduct, as an estoppel ; he is not an innocent purchaser.

DARGAN, C. J.—There can be no doubt that the payment made by Price, the sheriff, operated as a satisfaction of the judgment and execution *pro tanto*, and consequently the lien, which was older than the deed of trust, was gone, to the extent at least of the payment made by the sheriff, although he made no endorsement or return of satisfaction on the writ. Therefore it would have been the duty of Houston, the trustee, to have protected the slaves from sale, for the purpose of refunding to the sheriff the amount he had advanced to Choice, Harbin & Co., if Crutchfield, the *cestui que trust*, had done nothing respecting the sale, and had not assented to it.

But I am clearly of the opinion, that, if Haynes, the grantor, and Crutchfield, the *cestui que trust*, knew that the sheriff had

advanced the amount due on the execution to Choice, Harbin
& Co., and with this knowledge, they assented to the sale
under the second execution, for the purpose of refunding to
the sheriff the amount he had advanced, then Houston, the
trustee, ought not to be charged with the amount he paid to
the sheriff at the sale. The rule is, that if a *cestui que trust*
assents to the violation of the duties of the trustee, his interest
in the trust estate must be subjected to the protection of the
trustee. This principle was announced when this cause was
before us at a previous term, 11 Ala. 49; and it is asserted
in the case of Booth v. Booth, 1 Beavan 126. Indeed, I think
it accords with the maxim, *volenti non fit injuria*.

The sole question therefore is, did Haynes, the grantor, and
Crutchfield, the *cestui que trust*, know that Price, the sheriff,
had advanced the money due on the execution to Choice,
Harbin & Co., and with this knowledge did they assent to the
sale of the negroes for the purpose of refunding to him the
money so advanced. That Haynes, the grantor, knew of the
advance, and that he assented to the sale, is evident from his
answer; but whether Crutchfield knew of the advance made
by the sheriff, and with this knowledge assented to the sale of
the slaves, for the purpose of refunding the sheriff the amount
so advanced, depends exclusively on the deposition of Mrs.
Haynes, the widow of the grantor, who was examined after
his death. She fully proves that Crutchfield knew that
Price, the sheriff, had advanced the amount of the execution
to Choice, Harbin & Co., and also that he advised and urged
the sale for the purpose of raising the amount of the execu-
tion, and, when he was informed that the slaves had been
sold for that purpose, he said it was the best that could have
been done.

If this evidence be admissible, then every fact is proved
necessary to the protection of the trustee; but it is contended
that it was properly excluded by the Chancellor, on the ground
of the interest of the witness, she being a distributee of her
husband's estate. The rule undoubtedly is, that no one can
testify when his testimony tends to increase a dividend in the
distribution of which he is entitled to participate; therefore
a distributee of an estate is incompetent to testify, when his
testimony would tend to the benefit of the estate and to in-

crease his *pro rata* share.  Williams v. Temple, 6 Ala. 656.
But if the testimony of the distributee would not be beneficial
to the estate, but on the contrary would tend to decrease his
distributive share, then he would be called to testify rather
against than in favor of his own interest, and for this pur-
pose he is clearly competent; and so I consider is the case of
Mrs. Haynes.  It is very certain that the debt due to Crutch-
field is a charge on the estate of Haynes, and if Houston can
be made to pay it, or any part of it, to the extent of the re-
covery against Houston, will the estate of Haynes be benefit-
ed, and the share of the widow be increased.  Her interest
is therefore on the side of Crutchfield, and she is called to
swear against her interest when examined by Houston; for
whether he gains or loses, he can have no claim against the
estate of Haynes.

Mrs. Haynes being a competent witness, and she proving
every fact necessary to protect Houston in the amount of money
he paid to the sheriff, Price, at the sale of the slaves, we
think the Chancellor erred in his decree, in charging him
with this sum, and to this extent must the decree be reversed.
It appears to me, that all the parties, that is, Houston, Haynes,
Crutchfield and Price, labored under the impression that the
execution of Choice, Harbin & Co. was still a lien on the
slaves, notwithstanding the sheriff had advanced the amount
of it to the plaintiff; and laboring under this impression, they
all in good faith assented to the sale for the purpose of
refunding the money to the sheriff.  But even under this
view of the case, as Crutchfield was advised of the fact that
the money had been advanced by the sheriff, and he still
urged the sale in order to refund him the money, it would
now be inequitable and unjust to charge Houston with the
amount, when the sale was made in accordance with his,
Crutchfield's, wishes at the time.  Indeed, as he was advised
of all the facts, and acted upon a knowledge of them, he is
bound by his acts; having assented to the sale, it binds him,
and the *onus* must be borne by him.

The trustee is entitled to be protected to the extent that he
paid for the slaves at the sale; but as his right extends to pro-
tection only, if he had made a profit by a resale, he could not
be entitled to this profit; his equity extends to protection

alone; and any profit he might or may have made on a re-sale of the slaves, would enure to the benefit of the trust fund.

Let the decree be reversed, and the cause remanded.

NOTE.—This opinion was prepared by the late Chief Justice, and was delivered as the opinion of the court by PHELAN, J.