Rel: October 25, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2023-0654

_____

### Janet Huggins

### v.

### Jana Linger

### Appeal from Monroe Circuit Court
### (CV-22-900010)

PER CURIAM.

Janet Huggins ("Huggins") appeals from a judgment of the Monroe Circuit Court ("the trial court") approving the final settlement of the conservatorship of Vernon Charles Huggins ("the ward") and ratifying two earlier partial or intermediate settlements that had been approved

by the Probate Court of Monroe County ("the probate court") when it had jurisdiction over the conservatorship. We affirm in part, reverse in part, and remand.

Background

By order dated September 13, 2013, the probate court adjudicated the ward an incapacitated person and appointed Jana Linger, who is the ward's granddaughter and Huggins's daughter, the conservator of his property.

On October 31, 2014, Linger filed a petition for a partial settlement of the conservatorship. The probate court set Linger's partial-settlement petition for a hearing on November 25, 2014, and appointed a guardian ad litem to protect the ward's interests at that hearing. Linger served Huggins with notice of the filing of the October 31, 2014, partial-settlement petition and the November 25, 2014, hearing regarding that petition.

Linger supported her October 31, 2014, petition with a written document titled "register report," which, she said, her attorney had compiled from the conservatorship's bank statements. The register report listed and described each receipt of funds by the conservatorship by date

and source and described each expenditure of funds by the conservatorship by date, payee, and purpose. The record on appeal does not contain any bank statements, canceled checks, receipts, invoices, or other documents verifying the accuracy of the "register report" that Linger filed in support of the October 31, 2014, partial-settlement petition.

At the hearing before the trial court in the present case, discussed infra, Linger testified that she had provided the probate court with receipts and invoices evidencing the expenditures reflected on the register report; however, she said, the probate judge decided that only the register report would be introduced into evidence, and the receipts and invoices were thereafter discarded. Linger testified that the receipts and invoices had been in the possession of her then attorney, who had subsequently died, and that, after that attorney's death, Huggins had obtained his file and would not give Linger access to it. During her testimony at the hearing before the trial court in the present action, Huggins produced a thumb drive that, according to her, contained Linger's deceased attorney's file. Huggins testified that she had reviewed Linger's deceased attorney's file and that it did not contain any

3

information pertaining to the accounting of the conservatorship. Neither party introduced either the thumb drive itself or a paper printout of its contents into evidence.

Huggins testified that she had not filed a written objection to Linger's October 31, 2014, partial-settlement petition before the probate court approved it. Following the November 25, 2014, hearing regarding the October 31, 2014, partial-settlement petition, the probate court, that same day, entered an order approving the October 31, 2014, partial settlement. That order also directed Linger to pay her attorney $1,344.47 and to pay court costs totaling $437, which included a fee in the amount of $300 for the guardian ad litem.

Sometime in 2015, Huggins wrote the probate judge a letter asking him to remove Linger from her position as the ward's conservator, but the probate judge did not do so.

On August 24, 2018, Linger filed a petition for partial settlement of the conservatorship for the period September 16, 2015, through May 31, 2018. The probate court entered an order setting the partial-settlement petition for a hearing on September 19, 2018, and appointing a guardian ad litem to protect the ward's interests at that hearing. Linger served

4

Huggins with notice of the filing of the August 24, 2018, partial-settlement petition and the September 19, 2018, hearing regarding that petition.

In support of the August 24, 2018, partial-settlement petition, Linger filed bank statements for two checking accounts that she had used in administering the ward's estate. The bank statements included thumbnail images of the deposit slips reflecting her deposits of the funds that the conservatorship had received into those accounts. The bank statements also included thumbnail images of the front page of the checks that had been written on those accounts expending funds from the conservatorship. The thumbnail images of the deposit slips were annotated with handwritten notes indicating the source of the funds deposited, and the thumbnail images of the checks were annotated with handwritten notes indicating the purpose of each check. However, Linger did not file any receipts or invoices verifying the accuracy of either the handwritten notes regarding the deposit slips or the handwritten notes regarding the checks. Huggins testified that she had not filed a written objection to Linger's August 27, 2018, partial-settlement petition before the probate court approved it.

On September 19, 2018, the probate court held the scheduled hearing and, that same day, entered an order approving the August 24, 2018, partial-settlement petition. That order also directed Linger to pay her attorney $950 and to pay court costs totaling $1,077, which included a guardian ad litem fee in the amount of $250.

The ward died testate on December 13, 2020. The ward's will, which he had executed on April 26, 2009, nominated Judy Huggins Whitener, one of his daughters, as his executrix and nominated Huggins as his alternate executrix. After the ward's death, Whitener declined to serve as the ward's executrix, and Huggins petitioned the probate court to admit the ward's will to probate and to grant her letters testamentary. On May 7, 2019, the probate court admitted the ward's will to probate and granted Huggins letters testamentary.

On May 10, 2022, the trial court entered an order removing the ward's conservatorship from the probate court to the trial court. On December 28, 2022, Linger filed a petition for final settlement of the conservatorship in the trial court.

The trial court entered an order setting Linger's final-settlement petition for hearing on February 6, 2023, and appointing a guardian ad

6

litem. Linger began her testimony on February 6, 2023; however, before she completed her testimony, the trial court, at Huggins's request, recessed the hearing until April 11, 2023, so that Huggins's attorney could confer with her because she was not present in court on February 6, 2023. On March 23, 2023, Huggins filed a written objection to the final settlement and a motion to reopen the partial settlements that the probate court had approved when the conservatorship was pending in that court. Among other things, Huggins's objection to the final settlement asserted that Linger had failed to file vouchers in support of her accounting as required by Alabama law.

On April 11, 2023, the trial court resumed the hearing that it had begun on February 6, 2023. At that hearing, Linger completed her testimony, and Huggins testified. During the hearing, the witnesses referred to documents that supported the final-settlement petition; however, they were neither filed with that petition nor introduced into evidence at the hearing and, therefore, are not in the record on appeal. After both parties had rested their cases, both parties and the trial court agreed on the record that both parties would file posttrial briefs on May 10, 2023.

However, on May 8, 2023, two days before the deadline for the parties to file their posttrial briefs, the trial court entered a final judgment approving the final settlement, ratifying the two partial settlements that the probate court had previously approved, and awarding Linger a commission in the amount of $42,775 for her service as the ward's conservator. On May 10, 2023, the day the trial court and the parties had agreed that both parties would file their posttrial briefs, Huggins filed a postjudgment motion and a letter brief. In her letter brief, Huggins presented the arguments that, she said, she would have presented in her posttrial brief if the trial court had afforded her an opportunity to file that brief before entering its final judgment. Huggins's letter brief asserted, among other things, that the trial court should not approve either the partial settlements or the final settlement because, Huggins said, Linger had not supported either of her partial-settlement petitions or her final-settlement petition with vouchers as required by Alabama law.

On August 8, 2023, Huggins's postjudgment motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. Thereafter, Huggins timely filed a notice of appeal to this court. On December 20,

8

2023, this court transferred the appeal to our supreme court for lack of jurisdiction. On July 17, 2024, our supreme court transferred the appeal back to this court.

## Standard of Review

This appeal presents only a question of statutory interpretation. Linger argues that the ore tenus rule dictates that we affirm the trial court's judgment because, she says, that rule requires us to presume that the trial court's findings in her favor are correct. However, the ore tenus rule does not govern our review of this case; instead, our review is de novo because the only question presented is one of law. See Scott Bridge Co. v. Wright, 883 So. 2d 1221, 1223 (Ala. 2003) (An appellate court "reviews de novo a trial court's interpretation of a statute, because only a question of law is presented.").

## Analysis

On appeal, Huggins argues that the trial court erred in approving the final settlement of the conservatorship and in ratifying the partial settlements that the probate court had approved when the

conservatorship was pending in that court[1] because, she says, Linger failed to file "vouchers" in support of her partial- and final-settlement petitions. In pertinent part, § 26-5-2, Ala. Code 1975, provides that "the conservator must, at least once in three years, file in the court of probate an account of his or her guardianship, <u>accompanied with the vouchers showing his or her receipts and disbursements</u> …." (Emphasis added.) In pertinent part, § 26-5-4, Ala. Code 1975, provides that, on the day set for the hearing regarding the partial settlement, "the court must proceed to <u>examine the vouchers</u> and to audit and state the account, requiring evidence in support of all such <u>vouchers</u> or items of the account as may be contested or as may not on examination appear to the court to be just and proper …." Regarding final settlements of conservatorships, § 26-5-8, Ala. Code 1975, provides that "[t]he conservator … must file in the court of probate a full account of the conservatorship, <u>accompanied by the vouchers</u> …." (Emphasis added.) Moreover, § 26-5-10, Ala. Code 1975, provides that, at the hearing on the final-settlement petition, "the court

---

[1]As will be discussed later in this opinion, under certain circumstances, §§ 26-2A-147, 26-5-6, and 26-5-15, Ala. Code 1975, authorize a reexamination of partial or intermediate settlements when the court hears the petition for final settlement of a conservatorship.

must proceed to examine the vouchers and to audit and state the account, requiring evidence in support of all such vouchers or items of the account as may be contested or as may not on examination appear to the court to be just and proper …." (Emphasis added.)

The Alabama Code of 1975 does contain a definition of the term "vouchers." Moreover, the parties have not cited any caselaw in which an Alabama court has defined that term as it is used in the Alabama statutes pertaining to conservatorships.

Statutes requiring guardians[2] to file "vouchers" in support of their settlement petitions have been codified since the Alabama Code of 1823, although the language regarding vouchers used in the Alabama Code of 1823 varied somewhat from the language used in the precursors of the present code sections, which were codified in the Alabama Code of 1886.

---

[2]Before January 1, 1988, under Alabama law, the term "guardian" included both the fiduciary capacity now referred to by the term "guardian" and the fiduciary capacity now referred to by the term "conservator." See § 26-2A-1, Ala. Code 1975, Comment. The Alabama Uniform Guardianship and Protective Proceedings Act, § 26-2A-1 et seq., Ala. Code 1975 which became effective January 1, 1988, "recognize[s] two fiduciary capacities–namely, that of a 'guardian,' who is 'of the person' and analogous to a parent, and that of a 'conservator,' who is 'of the property' and more closely analogous to a trustee." Vreeland v. Marshall, 584 So. 2d 809, 810 n.1 (Ala. 1991); see § 26-2A-1, Ala. Code 1975, Comment.

11

Compare Chapter X, § 24, Ala. Code 1823, with §§ 2454, 2456, 2460, and 2462, Ala. Code 1886. The language used in §§ 2454, 2456, 2460, and 2462, Ala. Code 1886, remained substantially the same in the corresponding code sections of the Alabama Codes of 1896, 1907, 1923, 1940 and 1975, before the legislature amended them by enacting the Alabama Uniform Guardianship and Protective Proceedings Act ("the Act"), § 26-2A-1 et seq., Ala. Code 1975, which became effective January 1, 1988. See §§ 2339, 2341, 2345, and 2347, Ala. Code 1896; §§ 4429, 4331, 4434, and 4437, Ala. Code 1907; §§ 8202, 8204, 8208, and 8210, Ala. Code 1923; Tit. 21, §§ 129, 131, 135, and 137, Ala. Code 1940; and Act No. 87-590, Ala. Acts 1987. In the Act, the legislature, among other things, amended Title 26, Chapter 5, Article 1 of the Alabama Code of 1975, which had previously referred to guardians settling guardianships, to refer to conservators settling conservatorships instead, in accordance with the differentiation between guardians and conservators effected by the Act. See 1987 Ala. Acts, Act No. 87-590; and note 2, supra.

The term "voucher" is a legal term. Although Linger argues for what she says is the commonly accepted definition of that term, our supreme court has held that, " '[i]n the absence of a manifested legislative

12

intent to the contrary, or other overriding evidence of a different meaning, legal terms in a statute are presumed to have been used in their legal sense.'" Crowley v. Bass, 445 So. 2d 902, 904 (Ala. 1984) (quoting 2A D. Sands, Sutherland Statutory Construction § 47.30 (4th ed. 1973)) (emphasis added).

The first edition of Black's Law Dictionary, which was published five years after the Alabama Code of 1886, defined the term "voucher" as: "A receipt, acquittance,[3] or release, which may serve as evidence of payment or discharge of a debt, or to certify the correctness of accounts." Black's Law Dictionary 1229 (1st ed. 1891). The fifth edition of Black's Law Dictionary, which was in effect when the legislature enacted the Act, defined "voucher" using the same language as the first edition. Black's Law Dictionary 1414 (5th ed. 1979). According to the current edition of Black's Law Dictionary, which is the eleventh edition and was published in 2019, one definition of "voucher" is: "confirmation of the payment or discharge of a debt; a receipt." Black's Law Dictionary 1890 (11th ed. 2019). Based on those definitions, we conclude that the term "voucher" as

---

[3]An "acquittance" is "[a] document by which one is discharged from a debt or other obligation; a receipt or release indicating payment in full." Black's Law Dictionary 30 (11th ed. 2019).

13

used in §§ 26-5-2, 25-5-4, 26-5-8, and 26-5-10 means a receipt or release confirming payment of a bill or debt either by the ward's estate or to the ward's estate. This definition can also be inferred from the language of § 26-5-2 stating that that the conservator must file, at least once in three years, an account of the conservatorship accompanied "<u>with the vouchers showing his or her receipts and disbursements</u> ...." (Emphasis added.)

Contrary to what we conclude is the proper definition of "voucher" as used in the relevant statutes, Linger argues that our supreme court has implied that the term "vouchers" should be given a broad definition such as "evidence or proof" rather than a narrow legal definition such as a receipt or release confirming payment of a bill or debt either by the ward's estate or to the ward's estate. In support of that argument, she cites <u>Newman v. Reed</u>, 50 Ala. 297, 300 (1874), and <u>Savage v. Benham</u>, 11 Ala. 49, 52-53 (1847). In <u>Newman</u>, a guardian sought a final settlement of the guardianship for which he was responsible. The wards objected to certain credits that the guardian claimed that he was entitled to in his accounting. With respect to the credits pertinent to the present appeal, the wards objected on the ground that no vouchers had been filed in support of them. The probate court disallowed those credits, and the

14

guardian appealed. Regarding those disallowed credits, our supreme court stated: "There is no <u>proof or vouchers</u> to sustain these items. They were, therefore, properly refused as credits by the court on the trial below, though, upon sufficient proof, <u>by voucher or otherwise</u>, they were proper items of credit in such a case as this." <u>Newman</u>, 50 Ala. at 300 (emphasis added). We interpret our supreme court's statement to mean that a "voucher" is a particular form of proof rather than meaning that the word "voucher" is synonymous with the word "proof" as Linger contends. Otherwise, our supreme court would not have referred to "proof, by voucher or otherwise." Our supreme court's language implies that, although a "voucher" is a particular kind of proof, the word "voucher" is not coextensive with the word "proof." Regarding <u>Savage</u>, we note that the pages of the Alabama reporter cited by Linger are not part of our supreme court's opinion in that case and, therefore, have no legal effect.

Having determined the definition of "vouchers" as used in the Act, we turn to the two partial or intermediate settlements that the trial court ratified. In reviewing Huggins's challenge to those settlements, we must first determine whether Alabama law authorized the trial court to

reexamine the presence or absence of vouchers supporting those partial or intermediate settlements when it examined the final settlement. There are three Code sections that pertain to the reexamination of partial or intermediate settlements when the lower court examines the final settlement. Those Code sections are §§ 26-2A-147, 26-5-6, and 26-5-15, Ala. Code 1975. In pertinent part, § 26-2A-147 provides:

> "An order after notice and hearing allowing an intermediate account of a conservator is a final adjudication as to liabilities concerning the matters considered in connection therewith. Thereafter, at any time prior to final settlement, the account may be reopened by the court on motion or petition of the conservator or ward or other party having an interest in the estate for amendment or revision if it later appears that the account is incorrect either because of fraud or mistake."

(Emphasis added.) Section 26-5-15 echoes § 26-2A-147, providing, in pertinent part, that, after the court has approved a partial or intermediate settlement, "the account may be reopened by the court on motion or petition of the conservator or ward or other party having an interest in the estate for amendment or revision if it later appears that the account is incorrect either because of fraud or mistake." (Emphasis added.) Section 26-5-6, Ala. Code 1975, provides: "Upon the final settlement, a partial settlement must be taken and presumed as correct, but any item of the account may be reexamined and, if, on reexamination,

16

it is found incorrect, the item must be disallowed or allowed only so far as its correctness may appear."

All three Code sections deal with the same subject, i.e., reexamination of partial or intermediate settlements of conservatorships when the lower court examines the final settlement. Statutes that deal with the same subject are in pari materia. See Ex parte R.D., 313 So. 3d 1119, 1125 (Ala. Civ. App. 2020). Statutes that are in pari materia should be construed together to ascertain the meaning and intent of each. Id. Where possible, courts should resolve statutes that are in pari materia to form one harmonious plan and give uniformity to the law. Id.

Construing §§ 26-2A-147, 26-5-15, and 26-5-6 together to form one harmonious plan, we conclude that they together provide that, upon final settlement, a court may reexamine a partial or intermediate settlement but only to determine whether it is in error because of fraud or mistake. As so construed, the presence or absence of vouchers to support a partial or intermediate settlement is not by itself a ground for reexamining a partial or intermediate settlement when a court examines the final-settlement petition.

Furthermore, we note that Linger gave Huggins notice of the two partial- or intermediate-settlement petitions and notice of the hearings regarding those petitions, yet Huggins did not object to those petitions on the ground that they were not supported by vouchers before the probate court approved them. In <u>Vreeland v. Marshall</u>, 584 So. 2d 809, 812 (Ala. 1991), our supreme court affirmed a judgment approving the final settlement of a guardianship estate where the guardian had not filed vouchers because the parties opposed to the final settlement had not timely filed objections to the final settlement before the lower court approved it. In effect, our supreme court held that the parties opposed to the settlement had waived the guardian's failure to file supporting vouchers because they had not timely filed objections to the final settlement before the lower court had approved it. Based on the holding in <u>Vreeland</u>, we conclude that, even if Alabama law authorized the trial court to reexamine the partial or intermediate settlements to determine whether they were supported by vouchers, Huggins waived the absence of vouchers because she had not timely filed an objection asserting the absence of vouchers as a ground for denying approval of those partial or intermediate settlements before the trial court approved them. <u>See</u>

18

Vreeland. Therefore, we affirm the trial court's judgment insofar as it ratified the partial settlements that the probate court had approved when the conservatorship was pending in that court.

Regarding the final settlement, however, it is undisputed that Huggins timely filed an objection to that settlement, asserting, among other things, that Linger had failed to file vouchers in support of her petition. Although the parties referred to documents pertaining to the final settlement during their testimony, they did not introduce them into evidence and, consequently, the record does not contain any documents verifying the accuracy of the receipts and disbursements shown on the final accounting. Therefore, the final-settlement petition did not satisfy the requirement of § 25-5-8 that it be accompanied by vouchers, and, as a result, the trial court erred in approving it in the absence of the required vouchers. Accordingly, we reverse the trial court's judgment insofar as it approved the final settlement.

## Conclusion

In summary, we conclude that a "voucher" for purposes of the Act is a receipt or release verifying payment of a bill or debt either by the ward's estate or to the ward's estate. We affirm the trial court's judgment

19

insofar as it ratified the partial settlements at issue because we conclude that there is no statutory basis to reexamine them on the ground that they were not supported by vouchers and, even if there were such a basis, Huggins waived her objections on that ground by failing to file an objection to them in a timely manner. We reverse the trial court's judgment insofar as it approved the final settlement because we conclude that Linger failed to properly support her petition with vouchers. We remand the cause for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.

Lewis, J., concurs in the result, without opinion.