## DEAN AND WIFE v. RATHBONE'S ADM'R.

1. An administrator is not chargeable with the value of property of the estate, sold by him and delivered to the purchaser, before he has complied with the terms of sale, if the purchaser afterwards complies with the terms of the sale.
2. If an administrator, acting in the line of his duty, and within the scope of his authority, exercises good faith and ordinary diligence in regard to the property intrusted to his care, he is not responsible for a loss, occasioned by the subsequent insolvency of those who may be indebted to the estate.
3. An administrator is bound to pay due regard to the interest of the estate, and if the circumstances of a case evince a want of reasonable care and diligence, and a consequential loss to the estate, he must be held liable for it.

Error to the Orphans' Court of Madison. Before the Hon. C. C. Clay, jr., Judge.

This was a proceeding in the orphans' court of Madison, for the final settlement of the estate of R. C. Rathbone.

The legatees contended that the administrator was liable to be charged with the sum of $1,286, and interest thereon, which was due the administrator on a sealed note, executed by B. M. Lowe, and others. The material facts are, that the administrator sold the slaves of the estate, on the 5th January, 1843, on a credit till the first January thereafter, and John R. B. Eldridge, purchased three, for the sum of $1,286. This purchase was made by him, as a trustee, for the benefit of one Greene, and immediately after the sale, the slaves were delivered to Greene, who carried them to Tennessee. B. M. Lowe, at the time of the sale, was indebted to John R. B. Eldridge, as trustee of Greene, in the sum of $1,640, and it was the understanding, at the time of the sale of the negroes, that the administrator should receive the note of B. M. Lowe, with security, in payment of them. B. M. Lowe had been consulted by John R. B. Eldridge, and had agreed to execute a note with satisfactory security, payable to the administrator, for the amount he was indebted to John R. B. Eldridge.

Dean and Wife v. Rathbone's Adm'r.

On the day of sale, or the day after, John R. B. Eldridge handed Lowe the form of a note to be executed to the administrator, but it was not executed until the 14th June, 1843. On that day B. M. Lowe, with Fleming Jordan, [and G. F. Manning, his securities, executed a note payable to the administrator, on the 4th January, 1844, for the whole amount, to John R. B. Eldridge, which was $1,640, and delivered it to the administrator. The amount of the note exceeded the amount bid for the slaves, over $300. This amount was credited on the note, in June, 1845, and John R. B. Eldridge's name is signed to the credit. This however was not paid in cash, by Lowe, nor by his securities, but John R. B. Eldridge, becoming indebted to Lowe, and being entitled to the residue of the note over $1,286, the credit was entered by way of settlement between John R. B. Eldridge and Lowe. At the time of executing the note, Lowe and his securities were in good credit, and so continued to the spring of 1845, when they became insolvent. If suit had been instituted within six or seven months after the note fell due, the money would have been made. But although the administrator spoke to Lowe about the payment of the note, during the year 1844, he did not press him for payment. In March, 1845, Lowe gave a power of attorney to confess judgment, at the next September term of the circuit court, but soon after failed, and the parties are now insolvent. The sale of the slaves took place in pursuance of the terms of Rathbone's will. There was no necessity for the immediate collection of the money, as the legatees were minors, and had no guardian to whom the legacies could be paid, and the administrator permitted many of the debts to stand out, bearing interest, and realized a considerable sum for the legatees, by not calling in the debts.

The orphans' court held, that the administrator was not chargeable with this sum of $1,286, and to reverse this decree, this writ of error is brought.

Robinson, for plaintiff in error.

It appears from the will, that Rathbone left four children. And it appears from the bill of exceptions, that one of these

had died prior to the settlement. The administrator should have made the surviving children parties, and the administrator of the dead child also a party. Ex'rs of Sanky v, Heirs of Sanky, 6 Ala. 607; Harrison v. Harrison, 9 Ala. 480; Steele v. Knox, 10 Ala. 614.

By selling the two slaves to Greene, and permitting him, without giving the bond and security required, to carry them off, and out of the state, he made himself liable for their price. Betts v. Blackwell's heirs, 2 Stew. & P. 377; 2 Ste. N. P. 1866; 2 Russ. & Mylne, 215.

By this sale and delivery, Greene became indebted to the administrator to the amount thereof. And being so indebted, the administrator could not release or discharge without becoming personally liable for the debt. 2 Step. N. P. 1860, 1862, 1866; 1 Vern. 474.

He permitted the property to pass from him without bond. and to remain so six months. Thus dealing with the property of the testator, made him liable for the debt. For he placed himself in the power of the purchaser, leaving himself no discretion as to the sufficiency of the sureties offered. Hence we are bound to infer that he intended to make himself liable. Hunter v. Bryant, 2 Wheat. 32; Betts v. Blackwell, *supra*.

Being so liable, it must be considered as any other debt, for any other cause or consideration. When so considered, the debt at its maturity must be taken as so much cash in hand. Purdom v. Tipton et al. 9 Ala. 914.

But suppose him to have had the right to take this bond, and still we contend that he is liable for the debt, upon several other grounds:

1. He failed to collect the debt on Lowe, when he by proper diligence could have done so. The bond fell due 1st January, 1844. Lowe and Jordan, two of the makers, did not fail till May, 1845. And Lowe's deposition shows, that the debt could have been collected by suit or by demand.— Powell v. Evans, 5 Ves. jr. 839; 2 Story's Eq. 706, § 1274; Lawson v. Copeland, 2 Bro. Ch. Rep. 156, 131; Tibbs v. Carpenter, 2 Madd. R. 290; Moyle v. Moyle, 2 Russ. & M. 710; Buxton v. Buxton, 1 Myl. & C. 88; Brazier v. Clark,

Dean and Wife v. Rathbone's Adm'r.

5 Pick. 96; Hall v. Cushing, 9 Ib. 395; Gaskill v. Hannan, 11 Ves. 497; Brazeal v. Brazeal, 9 Ala. 497.

The case of Jennings et ux. v. Weeks, 1 Rice, 453, and the case cited there are strikingly analagous, and strongly in point. When the administrator sold, he exercised the discretion given him by the will, as to the length of credit. And this exercise exhausted fully that discretion. Then by giving the longer credit, till all the parties broke, made him liable. Hunter v. Bryant, 2 Wheat. 32.

The proof shows, that one of the makers of the bond became insolvent about the time of its maturity. This should have admonished the administrator of the necessity of a speedy collection. One third of the security failed and passed away, thus to this amount lessening its value. He took no action upon the other two thirds, but stood still and let them too pass away. Surely this is negligence—*gross* negligence.

The will required that the money should be collected and paid over; and such too are the requisitions of our statutes. Clay's Dig. 196, § 22, 23, 24.

Clay & Clay, contra.

1. The administrator acted in obedience to the statute and testator's (Rathbone's) will: 1. The statute directs administrators to sell on a credit of, at least, six months. Clay's Dig. 223-4, § 13. 2. Rathbone's will left the period of credit discretionary with his executors. The administrator, with the will annexed, succeeded to the powers and duties of the executor. 1 Lomax Ex. & Adm'rs, 343; 2 Wms. Ex. 601; McCall v. Peachy's Adm'r. 3 Munf. 208. 3. The statute directs administrators to take of purchasers, bond with approved security. Clay's Dig. 224, § 13. John R. B. Eldridge bid off the negroes for certain legatees of Richard Bass, deceased, and Lowe and his securities gave their bond to Rathbone's administrator for the amount of the purchase money, and included a certain amount due J. R. B. Eldridge. Lowe's credit, at the time, was, by itself, better than J. R. B. E's, and his securities were both esteemed strong, reliable men—and such security would have been generally approved. It is not proved that any one of said securities was

suspected, at the time the bond was given.   Security, apparently good and unsuspected at the time, but eventually proving bad, executor is not accountable for loss, any more than entitled to profits if it had turned out good.   Brown v. Litton, 1 P. Wms. 141.   Rathbone's administrator was guilty of an error of judgment only, for which, on equitable principles he cannot be held responsible.   Osgood v. Franklin, 3 Johns. Ch. Rep. 27 ; recognized in Betts's Adm'r v. Blackwell's Heirs, 2 S. & P. 373.·

2.  The administrator used due diligence to secure the amount the bond demanded.   On demand and refusal to pay he obtained from Lowe and his securities, a power of attorney to confess judgment.   The credit of Lowe and his securities (Jordan) was still good, and continued good for two months after, with the community at large, in proof of which he purchased from citizens of Madison county, several large crops of cotton.   At the time judgment was confessed, the bond had been due only about fourteen months.   Moreover, Lowe had not been sued by any one on his own account, till after his assignment.   The administrator's not suing earlier cannot operate to his prejudice, for the money of his estate was out (as he had every reason to believe) on good security, yielding eight per cent. interest for the benefit of the estate. Besides, the land had been sold on a credit, and the purchase money was not wholly collected, and the guardians (as before stated,) had not qualified ; and hence the estate was, of absolute necessity, not ready for final settlement and distribution.   2.  Only ordinary diligence is required of executors and administrators.   Executors are not liable for the loss of funds of the estate, if they act with ordinary diligence—nor for mismanagement, &c. of their agents, which they could not foresee or control.   Calhoun's estate, 6 Watts, 185.

3.  It is not pretended that the administrator (Eldridge) ever received the amount of the bond—and administrators, (who are also considered in equity as trustees—Leavens v. Butler, 8 Porter, 380,) are not ordinarily liable for more than they actually receive.

A court of equity, according to the lord keeper, in Palmer v. Jones, 1 Vern. 144, never charges a trustee with imaginary values, or more than he has received, unless the proof be

very strong of supine negligence. Lord Thurlow said, it must amount to a case of wilful default. 1 Ves. jr. 193. Chancellor Kent's opinion in Osgood v. Franklin, 2 Johns. Ch. R. 26, 28.

4. The removal of the negroes to Tennessee, before bond and security given, did not prejudice the interests of Rathbones estate, for bond and security were afterwards given. This case differs from Betts, Adm'r, v. Blackwell's Heirs, 2 S. & P. 373, in this respect; for the purchaser in the latter case, was unable to give bond *with security*, and security never was obtained.

DARGAN, J.—The plaintiffs in error contend, that the administrator became liable for the value of the slaves, by permitting Greene, for whose use they were bought by Eldridge, to take them into his possession, and to remove them from the State, before the bond stipulated to be given for the purchase money had been executed. If the bond, and security agreed to be given, had not been afterwards executed, the administrator would unquestionably have been liable. Betts v. Blackwell, 2 Stew. & Por. 373. But we cannot hold the administrator personally liable for delivering the goods purchased at his sale, if the purchaser in a short time afterwards, executes the security required by the terms of the sale. For if the purchaser, after he receives the possession of the goods, gives the security required, it is a compliance with his contract, and if the purchasers comply with the terms of sale, the administrator cannot be charged with negligence, merely because the purchaser received the possession of the goods, before the security required was executed.

2. By the terms of the sale, a credit of twelve months was allowed the purchasers. The bond which was given for the purchase money of the three slaves bought by Eldridge for Greene, fell due the first of January, 1844, had suit been instituted on it at any time within six or seven months after its maturity, the money would have been made; but the principal, and one of the securities, being considered entirely solvent, the administrator did not commence suit during the year 1844. In March, 1845, the makers executed a power of attorney to confess judgment, at the next September term

of the circuit court, but shortly after failed.   The plaintiffs in error insist, that the omission of the administrator to sue during all the year of 1844, is such negligence as should charge him with the amount of the bond.   What acts, or omissions, will constitute such negligence, as will render an administrator, guardian, or other trustee, personally liable, is a question on which there is such a number of authorities, that it is almost as difficult to collect them, as it is to reconcile them.   But I think the rule to be extracted from them is this : If an administrator, or any other trustee, acts within the scope, and on the line of his duty, and exercises good faith, and ordinary diligence in regard to the property entrusted to his care, he is not responsible, although loss befall the estate, by the insolvency of those who may be indebted to it, or who may have possession of the property belonging to it.   Clough v. Bond, 3 Mylne & Craig, 496 ; 2 Story's Eq. 511, 512 ; 2 Johns. Ch. Rep. 76 ; 4 Johns. Ch. R. 619. Applying this principle of law to the facts of this case, we cannot hold the administrator liable.   In selling the slaves, and giving credit, he was acting in accordance with the provisions of the will, and within the line of his duty.   The bond was good at the time it was received, and the credit of the principal, and one of the securities, was not doubted, until about the time, or just before their failure.   There was no immediate necessity to call in the money, for any purpose required by the estate, and perhaps no one during the year 1844, would have considered the bond a doubtful security. Under such circumstances, a prudent man, without subjecting himself to the charge of negligence, or a want of ordinary care, might decline to sue, or to call in the money.

We cannot apply the stringent rule, that an administrator must in all cases sue immediately, if the debts due the estate be not paid at maturity.   He must be allowed a reasonable discretion, whether to sue immediately or not.   To say that an administrator must in all cases sue immediately, if the debts of the estate be not paid at maturity, would often involve estates in unnecessary expense, which might be avoided by a short delay, without hazard or inconvenience.

In the exercise of his judgment, however, *whether to sue or not,* he must have a due regard to the interest of the es-

tate, and if the circumstances evince a want of reasonable care and diligence, by means of which loss befalls the estate, the administrator must be held responsible, as this administrator, in taking the bond and security, did not violate his duty; and as his failure to sue the bond, under all the circumstances, does not show a want of reasonable care and diligence, we cannot charge him with the loss.

Let the decree of the orphans' court be affirmed.