Willis, adm'r, v. Willis' Distributees.

---

## WILLIS, Adm'r, *vs.* WILLIS' DISTRIBUTEES.

1. A decree of the Orphans' Court, rendered on the day that the administrator presents his accounts and vouchers for settlement—without the accounts being previously examined, audited, stated, and reported by the judge for allowance at a succeeding term—without the appointment of guardians *ad litem* for the infant distributees—and without an order as to the person or persons to whom the balance found in the administrator's hands is to be paid—conforms to none of the requisites essential to a final decree.

2. To render the annual settlements of an administrator *primâ facie* evidence, so as to dispense with further proof of the items on final settlement, it is necessary that the distributees should have been allowed an opportunity of objecting to the items, and contesting their correctness.

3. If an administrator receives as assets of the estate a note, secured by mortgage on property more than sufficient to pay it, and makes no effort to enforce the security, he is chargeable with the amount of the note, notwithstanding the insolvency of the maker, unless he shows some satisfactory reason for his failure to do so.

4. An administrator, who, after receiving the assets of the estate, is superseded by the appointment of another, and, upon the resignation of the latter, again invested with the trust, is liable on final settlement of the administration last assumed to account for the assets received on the first, and not delivered by him to the intermediate administrator.

Willis, adm'r, v. Willis' Distributees.

Error to the Orphans' Court of Montgomery. Tried before the Hon. Thos. S. Mays, Judge.

LETTERS of administration on the estate of Brittain Willis, deceased, were granted to the plaintiff in error in January 1837, revoked and granted to Moses McLemore in October 1845, and, on his resignation in April 1846, again granted to the plaintiff. The plaintiff in error, on the final settlement of his last administration, offered his settlements made in June and October 1838, February 1841, and January 1843, as *prima facie* evidence of the correctness of the various items of credit contained in them respectively. The defendants in error objected to them as insufficient for that purpose, they not having had notice of, and been made parties to those settlements,—which objection the court sustained, and, the plaintiff failing to adduce other proof of their correctness, disallowed the credits. Among these credits, was one of $83 58, it being the amount of a note of one John Robinson, and which had been allowed in the settlement of October 1838. The proof was, that at the time of the original grant of administration, Robinson was insolvent, and has so contiued ever since, but that he had executed to the intestate, to secure the payment of this note, a mortgage on a tract of land more than sufficient in value to discharge it, which mortgage was received by the plaintiff with the note soon after the grant of administration to him in 1837. The mortgage was never recorded, but its existence was notorious in the neighborhood of the land, and it remained all the time in the hands of the plaintiff without an effort to enforce it, during which time the land was sold by the mortgagor to an individual living near it. The foregoing facts, with what appears in the opinion of the court, are deemed sufficient for a full understanding of the points decided. The ruling of the court and its decree are now assigned as error.

THOS. WILLIAMS, for plaintiff in error:

1. The final settlement, made in February 1841, was valid and binding, and could not be opened or reviewed, altered or amended.

2. The accounts, and settlements made on them by the administrator, before the judge, and passed on by him in June

1838, October 1838, February 1841, and June 1843, were *prima facie* correct, and could not be rejected on subsequent settlements, but upon proof by the heirs of the incorrectness of such accounts.—Powell v. Powell, 10 Ala. Rep. 910; Willis v. The Heirs of Willis, 9 ib. 330.

3. An administrator or executor is not liable for the loss of a debt upon contract with the testator or intestate, unless the executor or administrator be guilty of gross negligence. Ordinary diligence excuses him. Schultz v. Pulver et al. 11 Wend. 361; Truman v. Fairlie, 3 Mer. 42; Tebbs v. Carpenter, 1 Mad. 298; Thompson v. Brown, 4 Johns. Ch. 619; Rowth v. Howell, 3 Ves. 565.

It is insisted, that if there be any want of conformity to law on the part of the court, it ought not to operate against the administrator. All he could do was to attend the court and vouch his accounts—the judgment entry was no part of his duty.

ELMORE, for defendant:

1. When annual settlements in the Orphans' Court are so irregular that on error they would be reversed, they are not in conformity with the statute, and are not *prima facie* evidence.—Clay's Dig. 226, § 27; Douthitt's Adm'r v. Douthitt, 1 Ala. Rep. 594; Robinson & Wife v. Steele, 5 ib. 473; Willis' Adm'r v. Willis' Heirs, 9 ib. 330; Powell v. Powell, 10 ib. 910.

2. And the settlement in February 1841 is obnoxious to the same objections, as not being in conformity with law.— See authorities *supra*.

3. The settlement in February 1841 is not final, though purporting to be such. There is no judgment or decree on it; the administrator makes subsequent settlements; he submits without objection to file his accounts in this case for a final settlement, and thereby waives any right from that settlement, and admits it is not final; the records show it in fact not to be final.—Dement v. Adm'rs of Boggess, 13 Ala. 140.

4. Though the settlements are regular, the court on final settlement may look into them and correct errors apparent on their face. In this case, the previous settlements run into and make part of the subsequent ones; and in that of February

Willis, adm'r, v. Willis' Distributees.

1841, there is manifest error in charging the estate with the board of the children.—Willis v. Willis, 9 Ala. Rep. 330, and authorities *supra.*

5. But we think the record shows this to be a settlement of the administration *de bonis non;* and if so, he had no right to introduce the settlements of his previous administration as evidence for him, unless the distributees had offered them to charge him.

On all the above points the record does not show that there is any error or injury to the administrator.

6. His negligence about the note of Robinson was so gross that he ought to have been charged with the amount.

CHILTON, J.—It is contended that the decree rendered by the Orphans' Court, on the 1st of February 1841, is *final,* and that it is conclusive on the defendants in error. If this position be tenable, then the court erred in permitting the distributees to go behind that settlement, and in charging the administrator for a greater sum than was fixed by that decree, up to that time.

The entry, which it is insisted has the effect of a final decree, reads as follows: "This day being set apart for the final settlement of the estate of Brittain Willis, deceased, due publication thereof having been made, the court proceeded to examine the account and vouchers of Price Willis, administrator, which were found correct, and there is in the hands of said administrator the sum of forty-one 81-100 dollars, as per account current, which was examined, approved, and ordered to be recorded." Then follows the account of the administrator, by which he charges himself with

"Amount due on last settlement,    -    -    $1103 31
Interest,    -    -    -    -    -    -    202 00

Making total amount,    -    -    -    -    $1305 31
And credits himself by the board of
  seven children for three years, at $5
  per month,    -    -    -    -    $1260 00
Expense of publication,    -    -    3 50
Leaving balance due by administrator,    41 81
           —————1305 31"

This decree (if one it may be called) does not possess the first

requisite to constitute it a regular final one. It seems to have been an *ex parte* proceeding by the administrator, who produced his account on the day of settlement, which was examined, pronounced by the judge to be correct, and ordered to be recorded; whereas the statute required the account to have been exhibited with the vouchers to the Orphans' Court, upon the application of the administrator for final settlement, so that the judge might examine and audit it, and after having it properly stated, might report the same for allowance to a succeeding term—(Clay's Digest 226, § 27.) The object of the law in requiring the account and vouchers to be thus presented and stated, and publication to be made, &c., is to give the parties an opportunity to contest it, and to prepare for the contestation, between the presentation of the account and the time set for final settlement. No guardians *ad litem* were appointed for the infant distributees, who were wholly unrepresented, and who were illegally charged with $1260. Aside, however, from these irregularities, the act of 1830 (Clay's Dig. 304, § 42,) declares that all decrees made by the Orphans' Court on final settlements of executors, administrators, &c., shall have the force and effect of judgments at law, and executions may issue thereon for the collection of the several distributive amounts, against such executor, administrator, &c., and the court is required to insert in the final decree the amount of each distributee's share (Digest, 305, § 44.) These essential requisites to the regularity of the decree are wanting in the case before us. But it cannot be *final*, because there is not any order that the administrator pay the amount in his hands to any one, and no one is even named in the entry who is authorised to receive it. In short, there is no sentence or judgment of the court that any sum should be paid by the administrator or recovered by the distributees. See, as to the pre-requisites to a final decree, Robison & Wife et al. v. Steele, adm'r, 5 Ala. Rep. 473; Horn v. Grayson, 7 Port. Rep. 272; Douthitt, adm'r, v. Douthitt, 1 Ala. (N. S.) 594; Willis v. Willis, 9 ib. 330; Powell v. Powell, 10 ib. 910.

2. When this case was before this court at a previous term, (9 Ala. Rep. 330,) it was held that annual settlements, when made in conformity to law, are *prima facie* to be considered correct, but may be impeached by proof showing their incor-

rectness. But it was added, that in this case the accounts are upon their face inadmissible, and such as the County Court had not the power to allow upon a settlement with the administrator. This remark was influenced more particularly, if not exclusively, by the account for board, &c., which was allowed the administrator against the infant distributees. So far as respects the charge for board, &c., of the children of the intestate, the case is concluded by the previous adjudication; but this item does not occur in any of the annual settlements made previous to the 1st of February 1841. Are the other entries upon this record, which are insisted on as annual settlements, such as to afford *prima facie* evidence of their correctness, and to cast upon the distributees the necessity of falsifying the accounts? At first we were inclined to think they were, but subsequent examination has satisfied us fully that we were mistaken in that impression. In the first place, it does not directly appear that the court allowed the accounts presented by the administrator. The entry merely recites that the administrator made his annual settlement as per account current, examined, and ordered to be recorded. But conceding that this criticism on the language employed in the entry is too rigid, and that we will infer a settlement from the fact that the court examined the account and ordered it to be recorded, yet the settlement was not in accordance with the requisitions of law. Not that it is wanting in conformity in some formal or unimportant particulars, but in matters of substance, which are required to be observed for the protection of those whose rights are to be affected thereby. I have examined our statutes in vain to find a law authorising such annual settlements to be made without notice to the parties. I can find no warrant for such *ex parte* proceeding, and the learned counsel for the plaintiff in error, after having his attention specially called to this point, has been unable to find any—I take it for granted that none exists. The act of 1843, passed since these alleged settlements were made, requires notice, and the statutes existing previously, whenever settlements are mentioned, required them to be made upon notice. These settlements, if such they were, were not only *exparte* and without notice, but they were made at the same time the accounts were presented, without any order appointing guar-

dians *ad litem* for the infants interested as distributees, and no publication was made as pointed out by the statute.—Clay's Digest, 226, § 27. They are then wholly informal and irregular, and the distributees who have had no opportunity whatever of contesting the correctness of the accounts thus summarily presented and acted on, should not be placed in any worse condition than if such settlement had never been attempted. To render such annual settlements *prima facie* evidence of their correctness, and to dispense with further proof of the items therein embraced on the part of the administrator, they must substantially conform to the requisitions of the statute, at all events, the distributees against whom the record of them is sought to be used as evidence, must have had an opportunity of objecting to the items when allowed, and contesting with the admintrator their justness.—See Willis v. Willis, *sup.* and authorities on the brief of the defendant's counsel. But although such annual settlements may be regularly made, the court may examine into their correctness on the final settlement and rectify any mistakes which may have intervened. In Savage v. Benham, adm'r, 11 Ala. Rep. 55, this court held that the annual settlements of executors, &c., before the statute of 1843, had no other effect than to furnish the means of arriving at the true state of the final account, and the preservation of evidence in favor of and against the party making them. 9 Ala. Rep. 330; ib. 615; 10 ib. 910; 5 ib. 473; 1 ib. 594. The court therefore correctly held, these entries did not cast on the distributees the necessity of impugning the accounts in order to compel the administrator to adduce proof in support of them. In other words that such alleged settlements were not *prima facie* evidence of the correctness of the vouchers, &c. embraced in them.

3. As to the note on Robinson, we think the administrator was properly chargeable with it under the proof disclosed in the record. It appears that it was secured by mortgage, and no reason is shown why it was not collected. It does not appear that the administrator made any effort to render the security available. The bill of exceptions must be construed most strongly against him, and this fails to show that the person who purchased the land from the mortgagor had not notice of the mortgage, in which event he would hold it subject

to the incumbrance, notwithstanding it had not been recorded. If, from the smallness of the demand, and difficulty and expense of foreclosure, the interest of the estate required that he should not have engaged in litigation respecting the note, he should have shown this. But he neither proves this, nor any other fact which shows that he has not been guilty of gross neglect in failing to collect the note, and therefore should have been charged with it.

4. There can, we think, be no doubt that where one is appointed administrator in chief, and receives the assets of the estate in that capacity, and after having been removed, and another administrator appointed, is upon the resignation of the intermediate administrator, again appointed, he is liable on the final settlement of his administration last assumed to account for the assets received by him under his first appointment, and which he had never delivered over to the intervening administrator *de bonis non*. The property remaining belonging to the estate in his hands, is not in any manner changed by the administration *de bonis non*, it still remains assets in his hands, and being the administrator, he is bound to account for the same. Whether he is called upon to do so as administrator in chief or *de bonis non*, is a matter of no importance.

We feel no doubt as to the correctness of the ruling of the Orphans' Court, and contrary to our first impression, determine that the decree must be affirmed.