| 23 | 377 |
|-----|-----|
| 106 | 434 |

## LAY'S EXECUTOR *vs.* LAWSON'S ADM'R.

1. In an action at law between the administrators of two estates concerning the title to slaves, a woman who was the widow of both of the decedents is an incompetent witness for the administrator of the estate which has the smaller number of distributees.

2. When a witness who is shown to be incompetent on his *voir dire*, is nevertheless allowed to testify, facts proved by him on his examination in chief cannot be looked to for the purpose of curing the error.

3. The requisition of the statute regulating sales by executors and administrators, which prescribes that the purchaser shall give " bond with approved security," (Clay's Digest 223 § 13,) is directory only, and not mandatory; and the failure to observe it does not render the sale void.

4. When an order of sale made by the Orphans' Court does not on its face appear to have been granted on the application of the administrator, that fact will be presumed after the lapse of twenty years.

5. A purchaser at an administrator's sale, who does not give bond with approved security as required by the statute, but takes possession of the property, holds adversely to the administrator, and may acquire a perfect title under the statute of limitations of six years.

6. A bailment terminates when the objects for which it was made are accomplished, and it then devolves on the bailee to return the property; and if he fails to do so, he is liable for damages in detinue without a special demand.

7. In detinue for a slave, a plea alleging the slave's death since the last continuance is bad on demurrer.

8. Adverse possession for the time prescribed as a bar by the statute of limitations, may be given in evidence under the plea of the general issue in detinue.

ERROR to the Circuit Court of Greene.

Tried before the Hon. ANDREW B. MOORE.

DETINUE by Alexander Lawson, as administrator of Elijah Lawson, deceased, against Thomas T. Tyree, executor of Amos Lay, deceased, for several slaves, one named Isaac, another named Martha, and the others her children. The defendant pleaded: 1. *Non detinet ;* 2. The statute of limitations of six years ; 3. That the slave Martha had died since the last continuance. The plaintiff joined issue on the first plea, replied specially to the second, and demurred to the third ; and the demurrer was sustained. It is unnecessary to notice the other pleadings, as they do not enter into the opinion of the court.

45

On the trial, the plaintiff introduced Elziabeth Lay as a witness, who testified, on *voir dire*, that she was the widow of said Elijah Lawson, deceased, and had by him three children then living; that said Lawson died in 1828, in Greene County, Alabama; that in 1832 she married said Amos Lay, the defendant's testator, who had children then living by a former wife, and that she had three children by him, all of whom were living; and that the estate of neither of her said husbands had been declared insolvent. Upon this state of facts, the court decided that she was a competent witness, and the defendant excepted.

Upon her examination in chief this witness testified, that at the death of her first husband, said Lawson, she was left with three small children, the oldest seven, and the youngest three years of age; that in 1828 Sanderson, his administrator, sold at public auction, to the highest bidder, the girl Martha, who was then about six years old; that she became the purchaser at this sale, and took the girl Martha into her possession, claiming her as her own property, and kept her until her marriage with Lay in 1832; that said girl went into Lay's possession on his marriage with witness, and was held and claimed by him from that time until his death, which occurred in Greene County, Alabama, in 1851; that said girl then went into the possession of the defendant, as his executor; that the other slaves now sued for, except Isaac, were the children of said Martha; that upon said sale and purchase of said Martha, witness did not give bond with approved security for the purchase money, nor did she give any note or obligation in writing; that the administrator did not ask or require any at the time, nor has he since asked or required any; that she has never paid the purchase money of said slave, nor has she ever been asked to pay; that said Sanderson continued to act as administrator of said Lawson until his death, which occurred in 1834, never having made a final settlement or distribution of said estate; that the slave Isaac was the property of said Lawson at the time of his death, and was never sold by said administrator, but was left by him with witness to help to raise and support her said three children by Lawson; that said administrator had never demanded said slave either of her or her second husband, Lay, and that said slave was so held until the death of said Lay.

The plaintiff also proved, that there had been no administra-

.tion on the estate of said Lawson from the death of Sanderson, in 1834, until August, 1851, when letters of administration *de bonis non* were granted to plaintiff.

It was further proved that said order of sale, under which said Martha was sold, was made after the grant of letters of administration to said Sanderson, and was as follows :

"ORPHANS' COURT, September Term, 1828."

" Ordered by the court that Lemuel G. Sanderson be authorized and required to expose to sale so much of the personal property belonging to the estate of Elijah Lawson, deceased, as shall be sufficient to pay the debts due from said estate, on giving such notice by advertisement as the law requires, on a credit of six months, to the highest bidder at public vendue, except the crop, and that he permitted to sell that at public or private sale as to him may seem best."

Upon this state of facts, the court charged the jury, that, if Mrs. Lay failed to give bond or note with approved security, for the girl Martha, it was not a compliance with the terms of sale, and the sale was void as against the plaintiff, and that the statute of limitations interposed no bar to a recovery ; that, as to the slave Isaac, no demand previous to the issue of the writ was necessary to entitle the plaintiff to his right of action ; but, unless he made such demand, he was only entitled to hire from the issue of the writ. To this charge the defendant excepted, and asked the court to give several other charges, which it is unnecessary to set out, as the opinion is based on the charge given.

The rulings of the court upon the pleadings and evidence, as above shown, and the charges given and refused, are here assigned for error.

S. F. HALE, for plaintiff in error :

1. Elizabeth Lay, being the widow of Elijah Lawson, deceased, and a distributee of his estate, was incompetent on the ground of interest to testify for his administrator ; and her interest appearing, the party offering her must show that her interest is balanced ; and this is not done by showing that she was also the widow of defendant's testator, and that she had three children by each husband, especially when it appears that her last husband, against whose estate she is offered, has other children living.—10 Ala. 900 ; 6 Ala. 656.

2. That part of the statute which requires purchasers at administrators' sales to give " bond with approved security," (Clay's Digest 223 § 13,) is directory merely, and not mandatory ; and therefore the sale made by Lawson's administrator in 1828, being under an order of the Orphans' Court, at public auction, after notice given as required by law, (if, as insisted by defendant in error, the administrator delivered the property to the purchaser,) was a good act of administration, and divested the estate of the title to the girl Martha : it was not rendered void by her failure to comply with the terms of the sale, by giving bond with security. Such was the doctrine held applicable to sheriffs' sales, who, like administrators, are only authorized to sell for the purposes and under the restrictions imposed by law.—3 Strobh. 217 ; 8 Ala. 153. If that clause be held to be mandatory, it must be strictly pursued, and no substitute to which the parties may resort can be effective to pass the title, although the interest of the estate may be equally protected in the particular case.—Humphries & Wier v. Davis, 4 Ala. 443, where it was held, in a case where the administrator had sold the property at private sale, in violation of the inhibition of the statute, that the sale was void, and conveyed no title, although the interest of the estate was fully protected, the property having been sold for a full price, the purchase money received, and applied in due course of administration. But we hold, that this question has, in effect, been passed upon, both by this court and in Mississippi, where a like statute is in force. In Kavanaugh & Wife v. Thompson & Wife, 16 Ala. 817, where an administrator had sold property at private sale, it was held, that he was chargeable on final settlement, at the election of the distributees, with the value of the property, because by his illegal act he had been guilty of a conversion. But in Dean & Wife v. Rathbone's Adm'r, 15 Ala. 333, where the administrator had sold the property, and permitted it to be carried out of the State, and six months afterwards took the bond of a third person, with security, which proved insolvent, this court held the administrator not chargeable on final settlement with the amount so lost, because, as the court held, he had acted in good faith and with due diligence. But, if this provision of the statute is mandatory, his failure to take bond and security from the purchaser, upon the delivery of the property, was a violation of

Lay's Ex'r v. Lawson's Adm'r.

law, and, under the decision of Kavanaugh v. Thompson, *supra*, would have rendered him liable, at all events, for any loss which the estate might sustain thereby. Again; if that clause of the statute is mandatory, a sale contrary to its provisions is void.— Fambro v. Gantt, 12 Ala. 298; Smedes' Digest 255 § 218. And the vendee, although in possession of the property, can resist the payment of the purchase money. But in 1 Smedes & Mar. Ch. 172, where the administrator had taken the notes of a third person, endorsed to him, upon the sale of property belonging to the estate, the court held that the payment of the purchase money could be enforced, and set up a statutory lien on the property for that purpose, which could not have been done if the sale were void. And this court has often held that a purchase by an administrator at his own sale, where it is impossible in the nature of things that bond with security can be given by the purchaser, is valid, and vests the title to the property in the purchaser.

3. As we understand the facts disclosed in the bill of exceptions, Sanderson did not consent that Mrs. Lawson should take possession of the girl Martha, or in any way waive his rights in that behalf; nor was it submitted to the jury to find how the facts were in this respect, but the charge of the court was upon grounds wholly independent of any considerations of this kind, and rested simply upon the fact that the purchaser did not comply with the terms of the sale. The administrator, then, having sold the property in comformity with the provisions of the statute, and done nothing, so far as the record discloses, to estop himself from suing the purchaser, either for the purchase money or the slave, if she failed or refused to comply with the terms of the sale, a right of action then accrued to him.—3 Strobh. 217; 8 Ala. 153. And as the statute of limitations then commenced to run against him, the slave being thereafter held adversely to him and all others, it was not arrested by his death in 1834.— 3 Stewart 180; Lee v. Leachman, 22 Ala. 452.

4. At the time of the marriage of Amos Lay with Mrs. Lawson, in 1832, she was holding and claiming the slave Martha as her own property, and by virtue of the marriage he became, in law, a *bona fide* purchaser of the property for valuable consideration, and without notice, and is therefore entitled to protection.—Sterry & Wife v. Arden, 1 Johns. Ch. 261.

5. The statute of limitations not only bars a recovery of personal property, but, in favor of a *bona fide* purchaser, absolutely changes the title thereto.—Howell v. Hair, 15 Ala. 198; Jones v. Jones, 18 Ala. 253, and cases there cited. It may, therefore, be well set up by way of plea, or relied on as a muniment of title under the general issue; and in this case, the record shows that there was no demurrer to plaintiff's second replication to the plea of the statute.

6. If it were true, as contended by defendant in error, that the sale by Sanderson to Mrs. Lawson was illegal and void, then it did not divest Sanderson of the legal title to the property, for a void act cannot divest any one of title; and being held and claimed by Lay, a *bona fide* purchaser for valuable consideration without notice, as his own property, in opposition to Sanderson's legal title, and adversely thereto, from the time of his marriage in 1832, his title will be perfected by the mere lapse of time, (Howell v. Hair, *supra;*) and the fact that Sanderson had, by his own voluntary illegal act, created an estoppel to a recovery by himself, cannot deprive a *bona fide* purchaser of his legal right to have his title perfected by lapse of time, or bring the case within any of the exceptions of the statute; and courts will not extend these exceptions.—1 Cowen 356; 16 Wend. 572; 17 Ala. 372.

7. The Orphans' Court has plenary jurisdiction over the subject matter of estates of deceased persons; and having jurisdiction, its orders will be presumed to be correct, especially after the lapse of more than twenty years.

8. As to the slave Isaac: Detinue will not lie to recover a slave hired out to continue in the service of the hirer until demanded, without a special demand.—1 Stewart 254; 13 Ala. 376; 4 Dev. & Bat. 354.

9. The unlawful detainer, and not the original taking, is the gist of the action of detinue; and therefore damages can only be recovered from the date of the demand, or from the bringing of the suit if no demand is made.—Tunstall v. McClelland, 1 Bibb 186; 3 Porter 279; 5 Ala. 304; 5 Dana 34; 2 Texas 130.

10. The record discloses that the last charge asked by defendant below, was in reference to the hire of the slave Isaac, and asserting, as it does, a correct legal proposition, it should have been given.

11. No supposed defect in the order of the Orphans' Court for the sale of the property, can avail the defendant in error, because, in his fifth replication to defendant's plea of the statute of limitations, he concedes the regularity of the order, and relies alone upon the purchaser's failure to comply with the terms of the sale.

12. In answer to the point made by defendant's counsel in reference to the pleadings, it will be seen from an examination of the record, especiall·· the judgment entry, that there is no demurrer to the plaintiff's second replication to the plea of the statute of limitations, but issue thereon.

R. H. SMITH, *contra :*

Mrs. Lay was a competent witness. The objector must show that the witness offered has a present, certain, vested interest against him ; if the interest is of a doubtful character, the objection only goes to his credit. The witness being always presumed competent, it is the duty of the objector to show him incompetent; and if he fails satisfactorily to establish it, the witness is to be sworn.—1 Green. Ev. 390 ; 3 Porter 433 ; 3 Gill & J. 357 ; 6 Ala. 648. When the whole ground of objection is based on what the witness says, all he says must be taken together.—1 Green, Ev. § 422. On the most favorable view for the plaintiff in error, neither the court nor the witness could tell which way her interest was. It might take one half of the recovery to pay Lawson's debts, while none of the property might be required to pay Lay's debts; and thus her interest might be with defendant below, although there were more distributees of Lay's estate than of Lawson's. Therefore, the objector should have shown more than he did. Taking all the witness said together, the uncertainty of interest is still more apparent. Both estates were solvent, but to what extent, or whether they would close solvent, could not be told.

But the interest of the witness was adverse to the defendant in error. If Lawson's estate recovered, the witness would lose all share of it as a distributee of Lay's estate, of course ; but if Lay's estate succeeded, she would get a share of it, or its value, in this way : the property remaining part of Lay's estate, she would get her share of it ; Lawson's administrator could make Sanderson account for the *devastavit,* and the sum obtained

would, in part, be received by her as distributee.—Clay's Dig. 221 § 4. Again; should Lawson's estate recover, Lay's executor could, by bill in chancery, enjoin her share in it from Lawson's estate, on the ground that she should not injure the estate by her own wrong, and on the ground that she received the property and should not participate in the fruits of her own wrong.—Weir v. Davis, 4 Ala. 446. This would be so, unless this right was obliterated by her marriage with Lay. If it was, it is shown above that, by plaintiff's failure to recover, she would get distribution from both estates; if the right was not destroyed by marriage to Lay, as said, she would be enjoined, and prevented from participating in the fruits of the recovery; and this too shows how uncertain, remote and contingent the interest of the witness is either way.

As to the merits of the case: The statute of 1809, (Clay's Dig. 223 § 13,) is not directory, in requiring that the administrator shall take bond with security from the purchaser. If so, every provision, except the prohibition against selling at private sale, is directory; for, by the same language, in the same sentence, it shall be his duty to apply to the court for and obtain an order of sale, and, on selling, take the purchaser's bond with approved security. The following authorities, however, show that the order of sale, and of course taking bond and security, are requisite to a valid sale.—Ventress v. Smith, 10 Peters 173; Weir v. Davis, 4 Ala. 444; Dearman v. Dearman, 4 Ala. 526; Swink's Adm'r v. Snodgrass, 17 Ala. 652; Fambro v. Gantt, 12 Ala. 298; Steger v. Bush, 1 Sm. & M. Ch. R. 18⁰. Upon this statute the Supreme Court of Mississippi have made the same decision in many cases.

It is said, however, that Steger v. Bush, *supra*, holds the sale voidable only; but this is not the principle upon which they hold that the statutory lien of Mississippi could be enforced: it is, that the purchaser is estopped from setting up the illegality of the sale. But foreclosing the mortgage is not suing on the debt; it is a proceeding *in rem*, to subject certain property because of a lien.—Harbin v. Levi, 6 Ala. 399. Fambro v. Gantt may be opposed to Harbin v. Levi; but it is unnecessary to consider whether it is or not, though I think the two cases reconcilable. It is enough, however, to show on what principle Steger v. Bush rested, or might have rested, as to the statutory mort-

gage, and that it did not rest on the view of the contract's being merely voidable. Kavanaugh v. Thompson, 16 Ala. 817, is relied on to sustain the position that the sale was only voidable; but it fails to the point, and only shows that distributees may elect to hold the representative liable for the value of the property.

In Dean and Wife v. Rathbone, 15 Ala. 328, no question was made, because the note of a third person was taken, and hence it was not decided; nor is it important now to consider that question. Because the note and security of a third person may be taken, *non constat* that the sale is good without any note or payment. The possession may be delivered at the administrator's risk before the terms are complied with, and if they are afterwards complied with the sale may be perfected; but it does not follow that the sale is good, or only voidable, if never complied with. The record shows an order of sale by the court, but it does not show that it was "on the application of the administrator." The order must show everything to sustain the jurisdiction; not doing so, it was void, and the sale was without order of court in fact.—Clay's Digest 223 § 13; 3 Ala. 674; 6 Ala. 110.

At common law, a sale could pass no title without compliance with the terms. Without the statute, however, the vendor might waive the compliance, and deliver the property, and the sale would be good. The statute inhibits that assent, and it does accomplish that, or it is valueless. Being inhibited from making the waiver, it is not an act binding the estate, nor is it an act of administration; and if not, no title passed.

That the construction contended for is the true one, is apparent from the object and design of the legislature. It would be strange to say that a public sale must be made, but it could be done without order of court, and that the whole object of the statute, towit: the protection and security of the estate, might be defeated by dispensing with the last, the most important, requisition, reaping the fruits of the sale by securing the payment of the money.

Cochran v. Roundtree, 3 Strobh. Law R. 217, is relied on to prove that delivery perfects the sale. The case only decides that it does against a sheriff; and conceding the law of South Carolina to be as restrictive as our statute now under consider-

46

ation, which does not by any means appear, nor is it to be inferred, yet it is nothing but the doctrine of Pistol v. Street, 5 Porter 64. The plaintiff in execution could not re-levy, as is well said in that case, because he had one full levy, and defendant had lost his property by it. Of course he could not make another levy on it, or on any other property of the defendant's, but must look to the sheriff. The case, therefore, is without analogy; it depends on well settled principles applicable to levies and sheriff's sales.

Defendant below could not protect himself under the doctrine of a *bona fide* purchaser. The doctrine of sales in market overt has no existence in this country.—Ventress v. Smith, 10 Peters 173; Hull v. Clarke, 14 Sm. & M. 186; Weir v. Davis, 4 Ala. 442; Beasley v. Mitchell, 9 Ala. 780.

The statute of limitations does not run. The proposition is, that, if the sale was void, the title remained in Lawson, and the holding was adverse. The true proposition is, that the title remained in the estate. But, taking the proposition as stated, the deduction is wrong, for the title must not only be in some one *in esse*, but in some one capable of suing.—Murray v. East India Co., 5 Barn. & Adol. 66; Angell on Limitations 55, and cases cited in note 1; 6 Ala. 605; 2 Porter 171; 3 Stewart 172; 18 Ala. 828.

It is said the record does not show that Sanderson assented to the widow's receiving possession, and therefore he was not estopped, but could have sued; that the statute of limitations began to run, and continued. The bill of exceptions must be construed most strongly against the plaintiff in error. But, without this, it shows that the widow bid off the girl Martha, took her into possession, held her as her own, and had never been required by Sanderson to pay for her, or to give her note; nor has she ever paid for her. It must be supposed that the question of Sanderson's having parted with the possession was conceded, or that the question was properly referred to the jury, and not excepted to. Again; the facts set forth in the bill justified the court in even assuming the fact, and all the charges asked show that this fact was not disputed.

Again; the transaction between Sanderson and the widow was a fraud on the estate, and the statute could not run.—Powell v. Wragg & Stewart, 13 Ala. 161; Beach v. Catlin, 4

Day's R. 284. The crying off the property gave no title ; an act of sale, begun by it, failed, and the transaction became a private sale ; this was an act conceded to be inhibited by the statute, which estopped the administrator from suing, and thereby prevented the statute from running.

As to the slave Isaac, the possession was not adverse.—Angell on Limitations 402 § 5, 329 § 27, 327 § § 8, 9 ; Ward v. Ruder, 2 Har. & McH. 145 ; Strong v. Strong, 6 Ala. 347. Nor was that of Lay, on marriage, as has been before shown.— The evidence shows that Isaac was never held adversely by Lay or wife, and the charges asked concede it. By the terms of the contract, it could not become adverse until the children were grown, and the proof shows that Sanderson was then dead, and there was no representative until shortly before suit.— Clark v. Hardiman, 2 Leigh 347 ; Boatwright v. Meiggs, 4 Munf. 145. By the contract, the bailment terminated when the children were raised, and hire should have been recovered for Isaac from that time ; the charge that plaintiff could only recover his hire from suit brought, was error against us.

It is insisted that a demand of Isaac should have been made before suit brought. But the bailment had ended ; the party should not have pleaded, and put plaintiff on proof of title, but should have disclaimed title, and offered to surrender the slave. This has been decided several times, even in trover ; in detinue, no demand is ordinarily necessary.

It is also insisted that, in detinue, damages for the detention of the property are only recoverable from demand or suit brought ; but this action is nothing but debt in the *detinet*, and the recovery of ddmages is for the unlawful detention, and must be damages for the time it was unlawful.—Glasscock v. Hayes, 4 Dana 58; Miles v. Allen, 6 Ired. 88. The authorities which hold general language seemingly adverse to this, use it in reference to particular facts, making it true in the case in hand, but having nothing to do with the general doctrine.

The foregoing propositions show that the demurrer was properly sustained to defendant's rejoinder. That the demurrer was properly sustained to the third plea, see Bell] v. Pharr, 7 Ala. 813 ; Bettis v. Taylor, 8 Porter 564; White v. Ross, 5 S. & P. 123. The plea was not *puis darrein continuance*. Even could the plea have been allowed in any aspect, it could only be

to prevent a recovery of the slave, and to confine the recovery to her value ; and this is all the judgment is entered for, though the authorities would have justified the usual entry for her.— In no aspect, therefore, was defendant injured by rejecting this plea.

The defendant below pleaded the statute of limitations specially, to which were good replications ; no good rejoinder was put in. The plea, then, failed on an issue of law. Having been heard on an issue as to the statute of limitations, he was concluded as to it, and should not have been allowed again to raise it in the case, especially as the plea was replied to and avoided with facts to which he could not respond.

The replications having embraced the question of valid sale, &c., to which a response with facts was unsuccessfully attempted, defendant below should not have been again heard on the question of the validity of that sale. To allow it would be, to permit the party to speculate with a double chance on the same matter.

Detinue is an action ex contractu, and a count in debt may be added. In debt against a personal respensentative, you declare only in the detinet ; yet the statute of limitations must be specially pleaded. This was once doubted, but is now settled.— 1 Chitty's Pleadings 431, note 1. And there is no action ex contractu in which the statute of limitations can be given in evidence under the general issue.

The charge asked in reference to the hire of Isaac is double : first, that no hire could be recovered ; secondly, at least only from suit. It was asked as an entire proposition, and the court was not bound to separate it, but might refuse it altogether.— Besides, the court had already laid down the law on the question too favorably for defendant.

GOLDTHWAITE, J.—As to the competency of Mrs. Lay: In McGuire v. Shelby, 20 Ala. 456, we held, that a distributee of an estate was *prima facie* an incompetent witness, when his testimony tended to increase the funds of the estate. In the present case, the witness was a distributee in both estates, the one represented by the plaintiff, and the other by the defendant ; but the whole number of the distributees of the estate of Lawson were but four, while the distributees of the estate of Lay

exceeded that number. It follows that the distributive share of the witness in the property, if recovered by the plaintiff, would be larger than her share in the same property if it belonged to the estate of Lay. Upon these facts, therefore, she was an incompetent witness, and there was error in the ruling of the court, which admitted her as competent to testify.

It is said, however, that the facts disclosed by this witness upon her examination in chief, which are disclosed by the record, are sufficient to repel the presumption created by the facts stated on her examination on the *voir dire.* It is unnecessary to examine the testimony referred to, for this purpose ; for, conceding for argument's sake, that the view taken by the counsel for the defendant in error is correct, as to the effect of this evidence, we all agree that it cannot be looked to to cure the error previously committed. Upon this point it is to be observed, that the issue before the court upon the *voir dire,* was simply as to the competency of the witness. That issue was decided, and another and a different issue presented to the jury. If the evidence given by the witness upon the last issue had been submitted to the court upon the first, it may be that the defendant could have shown, by her further examination, that she was interested, notwithstanding the facts proved by her ; but matters which might thus have shown the existence of an interest on her part in favor of the plaintiff, although it would have been pertinent to the issue before the court, would not necessarily be connected with the issue before the jury, and in that case would have been irrelevant. The counsel had the right to stand upon his exception as taken, and could not be required to try the same question over in an issue framed for another purpose, and which, by the rules of law applicable to it, might not allow him to introduce the same evidence as upon the *voir dire.*

It also urged that the sale made by Sanderson, the first administrator of Lawson, was void, for the reason that no bond or other security was given by the purchaser. This question involves the construction of the first section of the act of 1809, (Clay's Dig. 223 § 13,) which is in these words : " It shall not be lawful for any executor, administrator or guardian, to take the estate, or any part thereof, at its appraised value, or to dispose of the same at private sale, except where the sale is directed by the will of the testator. But in all cases where it may

be necessary to sell the whole, or any part of the personal estate of any testator or intestate, it shall be the duty of the executor, administrator or guardian, to apply to the Orphans' Court of their county for an order of sale, and upon obtaining the same to advertise the time and place of such sale, in three or more public places in their county, at least thirty days previous to the day of sale, and then and there proceed to sell the same, at public sale, to the highest bidder, giving at least six months credit; the purchaser giving bond with approved security."— It has been settled by the repeated adjudications of this court, that a private sale of the property of the estate, made by the administrator, is void.—Weir v. Davis, 4 Ala. 444; Dearman v. Dearman, 4 Ala. 526; Fambro v. Gantt, 12 Ala. 398; Swink v. Snodgrass, 17 Ala. 653. The effect of the statute is, to declare this act unlawful, and it is upon this ground that the decisions referred to are based; but it does not necessarily follow, that the same consequences result from a failure on the part of the administrator to observe the other requisitions prescribed by the same section. The sale is not declared to be nugatory by the non-observance of such requisitions; and whether they are directory or mandatory, must, after all, depend upon the sound construction of each regulation, and of apparent legislative intention with regard to it.—Bank of United States v. Dandridge, 12 Wheat. 64.

We entertain no doubt that it was the object of the legislature, not only to prevent private sales of the property belonging to estates by the administrator, but any sale whatever, unless required by the condition of the estate, or the nature of the property proposed to be sold; and for that reason, it is essential to the validity of administrators' sales that the authority to sell should be derived from the court charged with the general direction and superintendence of the estate, and that it should be public; but we are not prepared to say that the provisions of the act which prescribe the notice, or relate to the security which is to be taken from the purchaser, stand upon the same grounds. On the contrary, we regard them rather as directions to the administrator, than as entering into the essence of the sale, and necessary to its validity. If, indeed, the last requisition was mandatory, it would seem that not only the particular description of security required must be given, but that it must be given by

the person specified in the act. The statute requires the bond of the *purchaser*, with approved security. The term "bond" is of definite and settled meaning; it is of higher sanctity and greater privilege than an instrument not under seal; and we know of no rule which would allow it to be dispensed with, if the requisition was other than directory. The same principle would apply to the term "purchaser." Yet we know that it is the general practice to secure the purchase by note with security; and in Dean v. Rathbone, 15 Ala. 328, we held that the administrator was discharged, by taking the bond of a third person with security; and this decision shows that the entire provision is not mandatory. In case of a private sale, or a sale without an order of court, the personal representative acts without authority; but the giving of notice, and taking security, are regulations prescribed for the exercise of his authority, applying only to the mode of doing the act, and should he fail to observe them, the sale may be avoided, or the bond of the administrator be resorted to, but the sale is not void.

Neither is there anything in the objection which is made to the order of sale by the Orphans' Court. It is true, that it does not appear upon the face of the order that it was granted upon the application of the administrator, but after the lapse of twenty years it may fairly be presumed that it was so made.— Gantt's Adm'r v. Phillips, at this term, and cases there cited.

It follows necessarily from these views, that the charge of the court as to the statute of limitations was erroneous. The evidence shows that the sale was made in 1828, and that upon the sale, Mrs. Lawson, the purchaser, acquired possession, and held the slave as her own property, until her marriage with the defendant's testator in 1832; and that from that time until his death in 1851, she was held and claimed by such testator. The first administrator, Sanderson, could have brought suit for the slave on the failure or refusal of the purchaser to give security, and the possession was therefore adverse, and upon the evidence as stated in the bill of exceptions would have warranted the charge, that a perfect title as to the slave Martha and her children was vested in the defendant's testator by the operation of the statute of limitations.—Howell v. Hair, 15 Ala. 164; Jones v. Jones, 18 Ala. 248.

As to the slave Isaac, there was no error in the charge of the

court prejudicial to the defendant. The evidence showed that he was held under a bailment made by the former administrator to Mrs. Lawson, and there was no evidence tending to show any adverse possession so far as he was concerned. The bailment, taken most favorably for the defendant, terminated when the objects for which it was made were accomplished, and it then devolved upon the party in possession, under the operation of the general rule in cases of this character, to return the slave if there was any person authorized to receive him.—Story on Bailments § 414; Benje v. Creagh, 21 Ala. 151. As to him, therefore, the plaintiff was entitled to recover damages by way of hire, from the taking out of letters of administration *de bonis non.*

The matters alleged in the third plea constiuted no defence to the action, and the demurrer to it was, therefore, correctly sustained.—White v. Ross, 5 S. & P. 123; Bettis v. Taylor, 8 Port. 564; Bell v. Pharr, 7 Ala. 813.

As to whether the adverse possession for six years could be given in evidence under the general issue in the present action, it is certain that possession of that character, and for that length of time, confers a perfect title on the possessor. The statute of limitations acts upon the title of personal property, and not only bars the remedy, but destroys the right. The possessor, having a complete title by adverse possession, could recover upon such title, if plaintiff; and that being the case, the same title may be proved by him when sued, under the general issue.—Smart v. Baugh, 3 J. J. Marsh. 308; Elam v. Bass, 4 Mun. 301.

As the points decided will probably be decisive of the case upon any future trial, it is unnecessary to consider the other questions presented.

The judgment is reversed, and the cause remanded.