SEARCY, ADM'R, *vs.* HOLMES, ADM'R.

[CONTEST IN PROBATE COURT AS TO ALLOWANCE OF CREDIT FOR NOTES
TAKEN BY ADMINISTRATOR ON SALE OF PROPERTY BELONGING TO ESTATE
OF DECEDENT.]

1. *Administrator; measure of diligence and care required of.*—If an administrator, in taking the bond or note required in sales, upon a credit, of the personal property of his intestate, acts with such care as a prudent man would take in the management of his own business, this will be sufficient.

2. *Same; what credit entitled to, on settlement.*—Upon such administrator's removal, and on his final settlement, he should be allowed a credit for notes thus taken, although the two securities required by the statute on such notes might have had no more property, real or personal, at the time of their signing said notes, than was exempt by law, unless it appears that the debts secured by said notes have been lost to the estate by the insolvency of such securities.

3. *Same; burden of proof to show loss.*—In such a case, the administrator *de bonis non* must show both the negligence and the loss of the debts.

APPEAL from Probate Court of Henry.
Heard before Hon. J. B. APPLING.

The facts are sufficiently stated in the opinion.

W. C. OATES, for appellant.—1. The words, *"at least two sufficient securities,"* in section 2077 of the Revised Code, clearly mean such security as will render the payment of the debt reasonably certain. This statute is certainly mandatory. If it were directory merely, then the executor or administrator would be governed alone by his discretion, and *discretion* would be the only safeguard of the interest of minors and other legatees and distributees of estates; for in no case would the courts hold such executor or administrator responsible for an injudicious or unwise exercise of a discretion with which the law had invested him, unless it could be shown that his conduct was *malifide.*

Permissive words, when used in a statute conferring rights on third persons or the public, should be construed

as mandatory and imperative for the purpose of sustaining and enforcing rights.—*Ex parte Banks*, 28 Ala. 28. But the words of the statute under consideration are imperative, and good faith is no protection against the consequences of a non-compliance with the requisitions of the statute.—*Cotton v. Rutledge*, 33 Ala. 114; Sedgwick on Stat. and Const. Law, 100.

The law presumed negligence on the part of the administrators, when it was shown to the court below, by an appropriate objection, on account of the insufficiency of the securities taken on the notes, unless they overturned that presumption by proof of their diligence. The proof in the cause shows that no inquiry was made by either of them in reference to the *sufficiency* of the securities. Is this such diligence as the law requires? The administrators were not restricted by the statute to personal security. They could have exacted mortgage security on real or personal property. If administrators exercise due diligence, they can, in ninety-nine cases out of every one hundred, obtain sufficient security for all property sold by them, and in this way secure themselves from liability and the estates they represent from loss.

JOHN M. MCKLEROY, *contra.*—The word "securities," in section 2077 of the Revised Code, means *personal* securities, or sureties. The words, securities, and sureties, are synonymous.—Bouv. Law Dict. The language in sections 2076, 2077, 2089, and 2093 of the Revised Code, shows conclusively that nothing but personal sureties is meant by the word "securities," as used in those sections.

Section 2077 of the Revised Code is certainly mandatory upon the administrator as to the *number* of the securities to be taken upon the notes or bonds, but the *sufficiency* of the securities must necessarily be left to the judgment and discretion of the administrator. The law never requires of any one an impossible or foolish thing; and it would be impossible for administrators to know certainly, in every instance, whether the securities offered are in fact solvent, and possess more property than is exempt from levy and sale under execution. He has no right to

require the persons themselves who are offered as securi-
ties, nor any others for them, to testify as to their solvency
and property; and if such oaths should be voluntarily
taken, they would be extra-judicial, and would not support
an assignment of perjury.

The law regards administrators and executors as trustees
in almost every relation they may bear to the estates they
represent; and the law will protect trustees, when they act
in good faith, as well as the *cestui que trust.—Pinckard's
Distributees v. Pinckard's Administrators*, 24 Ala. 250; see,
also, 39 Ala. 709; 33 Ala. 291; 19 Ala. 438. ·

In *Stewart's Administrator v. Stewart's Heirs*, 31 Ala.
207, the court uses the following language in relation to a
question similar to the one involved in this case: "It is
not averred that the makers of this note were either sol-
vent, *or reputed to be solvent*, at the time the note was exe-
cuted." This was applied to a question of pleading in the
chancery court, when the administrator himself had filed
his bill for a final settlement of his intestate's estate, and
he was sought to be charged with the amount of a note
taken by him for property belonging to the estate, and
which said note, it was averred, "proved insolvent." The
court properly held, that under the averments of his bill,
the administrator must be charged with the note, but the
clear implication from the language of the court in rela-
tion to it, quoted above, is, that if the administrator had
averred that the securities taken on the note were " either
solvent, *or reputed to be solvent*," at the execution of the
note, and the averment either of solvency *or* reputation of
solvency had been sustained by the proof, then he would
have been entitled to a credit for the note.

PETERS, J.—There is but a single question raised on
this record. This involves the construction of section 2077
of the Revised Code, governing the security to be taken
on sales of the personal property of decedents by the ad-
ministrators of their estates. The language of the statute
referred to is as follows: "When the sale is on credit,
notes or bonds, with at least two sufficient securities, must

be taken by the executor or administrator."—Rev. Code, § 2077.

In this case, it appears that the appellees were removed as the legal personal representatives of Bryant Holmes, deceased, and the appellant, Searcy, was appointed administrator *de bonis non* of said estate, to succeed them. And in August, 1869, said appellees proceeded to make final settlement of their administration of said estate, in the probate court of Henry county. On this settlement, the said appellees asked a credit for the amounts of two promissory notes taken by them in the course of their administration of said estate, on the sale of the personal property of said deceased. Copies of these notes are given below, as follows :

"$109 00.—Twelve months after date, we, or either of us, promise to pay Lewis H. Holmes, administrator of Bryant Holmes, deceased, or bearer, one hundred and nine dollars, for value received. February 8, 1868.

(Signed)      L. G. CALHOUN,

THOMAS CRADDOCK,

FREDERICK CARTER."

"$333 85.—Twelve months after date, we, or either of us, promise to pay M. E. and L. H. Holmes, administrators of Bryant Holmes, deceased. or bearer, the sum of three hundred and thirty-three dollars and eighty-five cents, for value received.

(Signed)      W. J. STANFORD,

W. H. HARDWICK,

M. K. WOOD."

To the allowance of these notes " as a credit to said administrators on said settlement, the administrator *de bonis non*" and guardian *ad litem* made objection in writing, "because said notes were given for personal property of said estate, sold by said administrators, who failed to take two good and sufficient securities upon said notes, as required by law." And thereupon they moved the court to reject these notes and exclude them as credits to said representatives. Upon this objection issue was taken. And the evidence on the part of the appellees in this court, showed that Hardwick, Wood, Craddock, and Carter, the

sureties on said notes, were of good reputation as debt paying men, and that the witnesses would have credited them for the amounts of said notes in the transaction of their own affairs, at the date of said notes; that they, said witnesses, thought them good. It was also shown that said Lewis H. Holmes thought said notes good when he took them, but he did not ask the sureties what they were worth, or how much property they had, but he knew that they were generally represented as responsible, and he made no inquiry about them. It was also proven that all of said sureties had gone into bankruptcy, except Wood, and that Stanford had likewise become a bankrupt. The contestants then proved that at the date of said notes, none of said sureties owned or possessed as much property, real or personal, as was exempt from levy and sale under execution by the laws of the State then in force; that no money could at that time have been collected out of them by legal process. This was in substance all the testimony offered on either side. There was no proof that the notes were really insolvent, or that any attempt had been made to collect them and that such attempt had failed. Upon this evidence, the court below overruled the objection, and allowed the credit as asked. To this the administrator *de bonis non* and said guardian *ad litem* excepted. It is now insisted that the court below erred in this decision.

Promissory notes or bonds taken by the administrator in chief, on the sale of the personal estate of the deceased, are assets of such estate, and if not collected, they pass to the administrator *de bonis non*, and vest in him.—Rev. Code, §§ 2433, 2078. More than twenty years ago, this court, after a careful examination of the authorities upon the measure of diligence required of administrators in the performance of their duties, under a statute quite similar in language to that above quoted, laid it down as a proper rule, that " if an administrator, or any other trustee, acts within the scope and on the line of his duty, and exercises good faith and ordinary diligence in regard to the property entrusted to his care, he is not responsible, although loss befall the estate by the insolvency of those who may be

indebted to it, or who may have possession of the property belonging to it."—*Dean and Wife v. Rathbone, Adm'r*, 15 Ala. 328, 334; *Stewart's Administrator v. Stewart's Heirs*, 31 Ala. 207, 316. The words of the statute must be construed in reference to these decisions, and so construed, they require of the administrator to show that he acted with ordinary prudence, and in good faith. Here the proof does not show that he acted otherwise, or that the debts evidenced by the notes mentioned have been lost to the estate, or that they will be so lost. The *onus* is on the administrator *de bonis non* to do this, before the administrator in chief can be charged.— *Wilkinson v. Hunter*, 37 Ala. 269; *Strong v. Wilkinson*, 14 Miss. 116; *Thomas v. White*, 3 Litt. 177; *Whitted v. Webb*, 2 Dev. & Batt. Ch. R. 442; *Deas v. Spann*, 1 Harp. Ch. R. 176; *vide Willis v. Willis*, 16 Ala. 652.

Without a more careful criticism of the above cited statute, we put the decision of this case upon the grounds that the proof does not show that the want of diligence alleged has terminated in the loss of the debts secured by the notes, or that this must necessarily happen.

The judgment of the court below is affirmed, at appellant's costs in this court and in the court below.